CASE 14—EQUITY—JUNE 14.

## Shouse, &c., vs. Utterback, &c.

APPEAL FROM WOODFORD CIRCUIT COURT.

A sale of property made by a debtor in contemplation of insolvency, and with the design to prefer some of his creditors to the exclusion of others, operates of *itself* as an assignment and transfer of all his property and effects for the benefit of all his creditors. The creditors *then* become invested with equal rights in the property of the debtor, and no one of them can acquire any advantage over the others by suing out an attachment against the estate of the debtor, where some of the creditors seek the enforcement of their rights by the appropriate action, brought within six months after the sale, although subsequently to the issuing and levy of the attachment.

JOHN W. BARR, for appellants, cited *Civil Code, sec.* 393.

M. C. JOHNSON, for appellees, cited *Civil Code,* 233, 285-6-7-8; 4 *Dana,* 12; *Act of* 1856, *Session Acts* 1855-6, *vol.* 1, *p.* 107.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

On the 14th of July, 1857, James Shouse sold a tract of land and some slaves for the purpose of paying some of his debts. He was largely indebted at the time, and the fact is fully established by the proof in the cause that the sale was made in contemplation of insolvency, and with the design to prefer some of his creditors to the exclusion of others.

On the following day several actions were brought against him by his creditors, and attachments issued against his estate, on the ground that he was about to dispose of his property by sale and removal thereof from the State, with the fraudulent intent to cheat, hinder, and delay his creditors in the collection of their debts. This ground was also fully sustained by the testimony.

Subsequently, but within six months after he had made the aforesaid sale, the appellees, who were also his creditors, filed their petition against him, the transferee of the property, and the attaching creditors; and claimed that the sale operated, under the statute, as an assignment and transfer of all his property and effects for the equal benefit of all of his creditors, and that the attaching creditors had no exclusive right to the

property on which their attachments had been levied, but that it, as well as all the other property of their debtor, was liable to distribution among all the creditors.

The court below decided that the attaching creditors did not have an exclusive right to the attached property, and they have appealed from that judgment to this court.

The respective rights of these creditors is the only question presented at this time for our determination. This question arises under the act passed in March, 1856, to prevent fraudulent assignments in trust for creditors, and other fraudulent conveyances. (Session Acts 1855–6, vol. 1, p. 107.)

The first section of that act provides that every sale, mortgage, or assignment, which shall be made by debtors in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion in whole or in part of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors. And the second section of the act provides that all such transfers shall be subject to the control of courts of equity, upon the petition of any person interested, filed within six months after the recording of the transfer, or the delivery of the property or effects transferred.

It is contended, on behalf of the attaching creditors, that the act only confers on the general creditors a right, which must be enforced by suit within six months; that the right which it confers is similar to that which the law confers upon the creditors to sue out attachments; that no right to the property exists in either case until an action is commenced; and that as their action was first commenced, and their attachments levied on the property before the other suit was instituted, they have an exclusive right to the property thus attached.

There is, however, a manifest difference between the provisions of the act authorizing attachments to be issued and those contained in the act of March, 1856. Under the former, the existence of the grounds for an attachment does not confer on the creditor who sues out an attachment any right to the property of his debtor, nor does he acquire any such right until his attachment is issued and placed in the hands of the proper

officer.   But under the latter, the act of the debtor in making
the transfer, with a design to prefer one or more of his credit-
ors to the exclusion of others, in contemplation of insolvency,
is made to operate of *itself* as an assignment and transfer of
all his property and effects for the benefit of all his creditors.
The right to, and lien upon, the property is not created, as it is
in the case of an attachment, by the suit which the creditor
may institute; but the right is created by the statute, and con-
ferred on the creditor at the time the illegal sale or transfer is
made by the debtor.   The right thus created has, under the
statute, a limited existence; and, consequently, the suit, for
its enforcement, must be brought within six months after
its creation.   But the right exists independently of any act of
the creditors, in whom it is vested by operation of law, and
its existence does not depend, as it does in the case of an
attachment, upon the bringing an action for the purpose of
creating it.

It is also insisted that the right which the statute confers
upon the creditors is at most a mere equity, and that the lien
of an attaching creditor is in the nature of a legal right, and
superior to that conferred by the statute upon the creditors.

We do not deem it necessary to determine, in this case, the
nature and extent of the right which the statute confers upon
the general creditors.   That question will more properly arise
in a contest between the creditors and a subsequent *bona fide*
purchaser for a valuable consideration, who makes his pur-
chase before the suit contemplated by the statute is instituted.
An attaching creditor, as this court has repeatedly decided,
does not, by a mere levy of his attachment, acquire the legal
title to the property attached.   The right which he thereby
acquires is subordinate to a mere equitable right, which is
created by the debtor prior to the commencement of his action,
and which is asserted before he obtains a judgment for the
proceeds of the attached property.   He cannot subject to the
payment of his debt any greater interest in the property upon
which his attachment is levied than the debtor himself has
therein at the time the attachment is sued out.   He does not,
at least before he recovers a judgment, occupy the attitude of
a purchaser for a valuable consideration.   Previous to that

time the claimant of a mere equity may, by asserting his claim and showing what interest the debtor is entitled to in the property, limit the operation of the attachment to that interest, whatever it may be.

But even if the attaching creditors were regarded as occupying the attitude of purchasers for a valuable consideration, and the statute, as they contend, only confers a mere equity on the general creditors, still they could not hold the property in contest in this case against that equitable claim.

They were apprised before they commenced their action of the existence of the right. They knew the debtor had committed an act which, under the statute, operated as a transfer of all his estate for the benefit of all his creditors. If, with this knowledge, they had acquired the legal title to the property, they would be compelled to surrender it to the equitable claim. They would not be *bona fide* purchasers, and could not, therefore, render the legal title available for their protection against the elder equitable right.

The object of the legislature in enacting the statute of 1856, was to deprive the insolvent debtor of the right to secure some of his creditors to the exclusion of others, and also to make all his property subject to distribution among all his creditors. This object is a just and equitable one, and the statute should be so construed as to give effect to the legislative intention, when it can be done consistently with the language used and its general provisions. This object would be, in a great measure, defeated by permitting some of the creditors to appropriate the property to their exclusive use and benefit by suing out attachments after the act has been committed by the debtor, which, according to the provisions of the statute, operates as a transfer of the property for the benefit of all the creditors. The creditors *then* become invested with equal rights in the property, and no one of them can acquire any advantage over the others by suing out an attachment.

The general creditors have in such a case, according to both the letter and spirit of the statute, a right to the property of the debtor, which right cannot be divested by levying an attachment upon the property.

Wherefore, the judgment is affirmed.