CASE 29—PETITION EQUITY—FEBRUARY 27.

# Graves, &c., vs. Ward, Sanders, and Hunt.

### APPEAL FROM SCOTT CIRCUIT COURT.

1. A deed executed by an attorney in fact, and recorded, does not operate as constructive notice, unless the power of attorney is also recorded, or lodged for record. (1 *Rev. Stat.*, *p.* 280.)

2. An agent cannot convey to himself, or to another for his use, so as to raise an equity in his favor; nor would an equity result to an agent from a parol agreement between him and his principal, whereby the former was to apply the proceeds of the sale to a debt due him from the latter; such parol agreement being within the statute of frauds.

3. Matters of defense alleged in a petition to be made a party—such petition being filed as an answer—need not be denied by a reply, but must be proved, even though some of the facts, so alleged, have been denied in a reply which was unnecessarily filed.

ROBINSON & JOHNSON and A. DUVALL, for appellants, cited 3 *Met.*, 436, 401; 2 *Met.*, 54; 4 *Met.*, 186, 60; 10 *B. Mon.*, 186.

HUNT & BECK for appellees.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

"If the conveyance, made under a power, is required by law to be recorded, or lodged for record, to make the same valid against creditors and purchasers, then the power must be lodged or recorded in like manner." (*Sec.* 14, *chap.* 24, 1 *Stant. Rev. Stat.*, 280.)

The deed of Graves to Tucker was founded on the power of attorney of McHatton to Graves. This letter of attorney could not be recorded for want of requisite proof. Hence the

recording of the deed, by virtue thereof, could not operate as constructive notice to the creditors of McHatton.

. Graves, as agent, had rented the Georgetown lot of land, and the lessee had been using it as pasture, but not living on it. If this be construed as notice, it was a notice that McHatton, through his lessee, still had possession.

The verbal understanding between McHatton and his agent, Graves, that, when the land was sold, the proceeds should be applied to the liquidation of debts due by McHatton to Graves, and such as the latter was bound for as surety, cannot be permitted to intervene between the debtor and his creditors, who have sought legal remedies, and, by attachments, acquired liens. Indeed, it might be well questioned whether it would be good for any purpose until the land should be realized into money by Graves, when, having the money in his hands, perhaps the relation of debtor and creditor, and this verbal understanding, would give him an advantage over other creditors.

There is no conflict between this opinion and the cases of Conn vs. Sims (3 *Met.*, 401), and Shouse vs. Utterback (2 *Met.*, 54).

The court below very properly dismissed the petition and adjudged to the attaching creditors the sale of so much of the land as might be necessary to pay their claims.

The judgment is, therefore, affirmed.

---

To a PETITION FOR REHEARING, PRESENTED BY THE COUNSEL FOR THE APPELLANTS, JUDGE WILLIAMS DELIVERED THE FOLLOWING RESPONSE:

After appellees sued out their attachments, appellants presented their petition to be made parties defendants, which the court ordered to be done; whereupon, they filed their petition, and afterwards an amendment as their answer, in which they set up that McHatton, being largely indebted to Graves, and who was also his surety for other large amounts, he executed to Graves the power of attorney to sell his Kentucky lands, and when a sale was effected, that he should apply the proceeds to the payment of such debts and liabili-

ties; that the only land which McHatton owned in Kentucky was the lot of about 24 acres attached; that it was encumbered with a dower claim, which was afterwards adjusted, but then the land could not be sold at a fair price, and that, to save himself and under legal advice, Graves, as attorney in fact of McHatton, "executed the conveyance referred to to G. B. Tucker, by whom *the title so conveyed was to be held in trust for said Graves* until such time as a sale of the property could be effected without sacrifice." This deed purports to be for the consideration of $4,000, "the receipt of which is fully acknowledged," and is dated 21st day of May, 1861, and acknowledged by Graves, attorney in fact, &c., the next day, upon which the county clerk made his certificate. Whereupon, the said Tucker and Graves, the same day of the acknowledgment, and without having it recorded, withdrew it from the clerk's office and so kept it until September 23d following, being subsequent to the suing out and levy of the attachments, when they had the deed recorded.

By an amendment, they set up that, immediately upon the sale, Tucker, by his tenant, took possession of this land, and has so held it ever since, and thereby gave notice to the world of his claim.

This petition and amendment of Graves and Tucker is not in any sense a set-off or counter claim as to plaintiffs, but is strictly a defense to show their superior title or equity; therefore, under the Civil Code, the allegations need not be denied by way of reply, but stand denied, and must be established by proof.

The indebtedness of McHatton to Graves, his power of attorney to Graves, and the deed to Tucker, are proved; but there is no evidence of any parol understanding that Graves was to appropriate the proceeds of said land to the payment of debts due him, nor is anything to this effect found in the letter of attorney.

It is in evidence that in January, 1861, Story rented the lot of Graves for the purposes of pasture, and continued in possession up to the levy of the attachment; but he knew nothing

of Tucker's purchase, had never been notified of Tucker's claim, &c.

The plaintiffs in the attachments unnecessarily filed a reply to some of the allegations of the petition, which does not deny the parol agreement between Graves and McHatton as set out. This was doubtless superinduced by styling the answer a petition, and done by way of abundant caution, and not as waiving any legal right, and can only be regarded as necessary so far only as said petition may be regarded as setting up a set-off or counter-claim, and regarded as a cross-action. It did not profess to be a cross action, but only a petition to become a party, and all its allegations, regarded by law merely as a defense, must be regarded as controverted, without answer.

It may be remarked that this can do Graves no injustice, for he does not assert an equity by virtue of the power of attorney and the parol understanding alone, but places his equity on the execution of the deed to Tucker as his trustee, and the indebtedness of McHatton to him, and claims the right to make this deed because of said parol understanding, the power of attorney, and the indebtedness. The power of attorney on its face is a mere naked authority by McHatton to Graves to sell and convey his Kentucky lands, uncoupled with any interest, and unwitnessed.

To permit such a paper to raise an available equity against creditors or subsequent purchasers, or to treat it as a memorandum signed by McHatton, whereby he could be charged, would seem to be a disregard of the long-established principles of the statute of frauds and perjuries enacted by our Legislature at an early period, and continued down to the present time, through our Revised Statutes.

If the deed of Graves had been a *bona fide* sale, and actually recorded by the clerk, still it would not be constructive notice under our statutes of conveyances, because the power of attorney, being unwitnessed and unacknowledged by the principal, could not be recorded. To regard it as a recorded deed would be to revolutionize our statute of 1856, which provides that a sale to secure one creditor to the exclu-

sion of others, made in contemplation of insolvency, should inure to the benefit of all the creditors; and it has been held at the present term, that where a debtor conveyed all the property he had in this State for such purpose, it comes within the purview of this statute, though he be a non-resident.

As the creditors have until the expiration of six months "after the recording of such transfer," it must be a recording according to the statutes regulating conveyances.

Then we apprehend the case must stand on Graves' equity as a creditor of McHatton and his attempted conveyance to Tucker, and he has so placed it in his defense.

Can Graves, as agent of McHatton, convey to himself or a trustee, to his own use, McHatton's land, and thereby raise an equity in himself?

This is no new question, but stands on long and universally recognized principles and an unbroken current of authority.

It may be remarked here as in the opinion, that as Graves was the agent of McHatton, his tenant's possession was the possession of McHatton; or if he be regarded as Graves' tenant, it is none the more efficacious for Tucker, as neither he nor Graves ever notified Story, the tenant, of any change of title or possession; so that Tucker, in no event, had such possession of the land as could put either creditor or purchaser on inquiry, or give information as to his claim, and, therefore, raises no equity in him.

The case of Russel's executor vs. Moore (3 *Met.*, 436), although cited with much ingenuity and apparent effect, does not aid him. Mrs. Russel was in possession as dowress, and having subsequently purchased an additional interest, this court held that her first possession inured to her subsequent purchase, because she could have no other possession, and because an inquiry of her by any subsequent purchaser would have informed him of her full claims. The principal, when he employs an agent to sell for him, is entitled to the faithful, unbiased judgment of his agent; therefore, equity will not permit the agent to sell directly to himself, nor will he be permitted by any subterfuge to sell and convey to another for his own use.

And some of the adjudicated cases say, that; however honestly the agent may act, and with whatever fidelity he may demean himself, yet the law will not sanction a transaction which, if recognized, would lead to temptation, and be destructive of that morality and fidelity which should ever characterize the conduct of agents.

The authorities on this subject are so very numerous as not to require citation.

The facts of this case are illustrative of the soundness of the policy of the law, as fully recognized by courts both of law and equity.

Graves has never given McHatton credit for the amount of the consideration set out in the deed to Tucker, though he says Tucker was to hold in trust for him, Graves. The title purports to pass from McHatton to Tucker; yet McHatton gets no credit, nor, indeed, has one cent been paid in any shape; yet it is said Graves gets a prior equity to those creditors who have acquired attachment liens.

Had McHatton mortgaged this land instead of making the simple power of attorney, February 7th, 1860, it would have inured to the benefit of all his creditors.

Had he then sold and deeded the land to him, it would have inured to the benefit of all his creditors. Had this power of attorney been duly authenticated, so as to have been admitted to record, and under it Graves, as agent for McHatton, had conveyed the land for the purposes set out by him, and had lodged the deed for record in the proper office, the sale would have inured to the benefit of all the creditors.

But instead of leaving the deed in the clerk's office, Graves and Tucker withdrew it the same day it was acknowledged, and kept it so secretly that no one but themselves and the clerk, not even Story, the tenant, seems to know of the sale. And having thus, by a means unknown to law, and contrary to our statutes both of conveyancing and the statute of 1856, attempted to vest the title in a trustee for the agent's benefit, and to secure his indebtedness, the court is asked to sanction such unprecedent attempt, and to disregard the legal rights of other creditors and their equities, which would have inured

had the statutes been complied with, and adjudicate Graves a prior equity, which we feel bound to refuse—

1. Because the parol contract between McHatton and Graves, as set up by the latter, is wholly unsustained by evidence.

2. Because, if proven, it could not avail as a prior equity over attaching creditors.

3. Because Graves could not convey to himself.

4. Because his power of attorney, being without authentication, did not authorize him to convey the legal title to any one, much less to a trustee, for his own use and benefit.

5. Because, in fact, there was no sale, though the deed recites a consideration of $4,000, yet no credit was given to McHatton.

6. Because Tucker never had any possession, this still remaining with Story, who rented of Graves whilst he was agent of McHatton, and before the attempted sale to Tucker, and no notice of the sale given to Story, nor any legal evidence thereof lodged in the proper recording office.

7. Because Graves could not, by a conveyance to Tucker for his own use, violate his legal duty as agent, and thereby raise an equity in himself.