## Preston, et al. v. Jeffers, Receiver of Central Life Insurance Company.

(Decided February 19, 1918.)

### Appeal from Franklin Circuit Court.

1. Corporations—Subscriptions Obtained by Misrepresentation—Fraud—Rescission.—When a person has been induced by the fraud and misrepresentations of the agents or officers of a corporation to purchase its stock, he may maintain an action to rescind the contract and recover back any money which may have been paid if the corporation is solvent. But if it is insolvent and a receiver has been appointed to wind up its affairs and instituted proceedings for that purpose, a stockholder who has been guilty of laches by not proceeding to obtain relief for the fraud practiced on him will not be allowed a rescission to the prejudice of the creditors of the corporation.

2. Corporations—Subscriptions Obtained by Misrepresentation—While it may be a fraud upon a subscriber for stock for the seller to misrepresent the value thereof, or to make promises beneficial to the subscriber, which were neither kept nor intended to be kept, as an inducement to obtain his subscription, or to misrepresent any fact pertaining to the corporate affairs, for all of which the subscriber might obtain relief if he applies for it in time, such matters will not constitute a defense in a suit to recover the subscriptions after the corporation has become insolvent and the subscriber is guilty of laches by failing to exercise diligence and to proceed beforehand.

3. Corporations—Subscriptions Obtained by Misrepresentation.—Although to promise a subscriber as an inducement for him to subscribe for stock that he would be given a lucrative position with the company may have been a part of the consideration for his subscription, still he should have proceeded before guilty of laches to have his contract reformed so as to express the true

one, and he can not defend on this ground a suit to recover his subscriptions after he is guilty of laches and the corporation has become insolvent.

4. Corporations—Insolvency—Action to Recover Subscriptions—Mismanagement of corporate affairs by its officers and agents is no defense to a suit to recover subscriptions after the corporation has become insolvent; nor can the fact that the corporation has surrendered its assets to other subscribers avail the defendant; neither is it a defense to such a suit that the corporation agreed to cancel the subscription and to surrender to the subscriber his obligation, as this would be not only a fraud upon creditors but upon other interested parties as well.

J. P. HOBSON & SON for appellant, John H. Preston.

T. B. McGREGOR, W. H. McCOY and A. COPLEY for appellant, A. Copley.

H. V. McCHESNEY and SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In a proceeding instituted by the Insurance Commissioner of the State of Kentucky, pursuant to the provisions of section 753 of the Kentucky Statutes, the appellant Jeffers was appointed receiver of the Central Life Insurance Company, a corporation organized under the laws of Kentucky in 1911 for the purpose of conducting a general life insurance business. After his appointment the receiver qualified as such and took charge of the affairs of the company. He then instituted this proceeding against the appellants, Preston and Copley, to recover from them on certain notes which they had executed to the insurance company in payment of stock for which they had subscribed.

The appellants and defendants filed separate answers in which they each urged as a defense fraud on the part of the company in procuring their respective subscriptions to the stock, and the execution of the notes sued on. The fraud and misrepresentations relied upon, as specified in the answer of the defendant Preston, was (a) that the company represented to him at the time that it would establish a branch office at his home town of Paintsville and put him in charge of it as its agent at a salary of $3,600.00 per year; that it had failed and refused to do this and never intended to do so; that he relied upon it and was induced to make his subscription and execute his notes, and that this was the consideration

for his doing so; (b) that the company a short while before the appointment of the receiver wrongfully and fraudulently through its officers and agents surrendered notes which various subscribers had executed to it, aggregating the sum of at least $50,000.00, to the makers, and that this was done without consideration and without authority; (c) that he paid or agreed to pay for his stock ten dollars per share (the par value being five dollars per share) upon the representations made to him by the agent selling the stock that the company had a surplus and that the stock was in reality worth the amount agreed to be paid and that it would regularly pay handsome dividends; (d) that it was agreed at the time that the defendant would not be called upon to pay his notes, but that they would be taken up with the dividends which his stock would earn and which the company would apply as earned to the extinguishment of his notes; that the promise to do this was also a part of the consideration inducing him to execute the notes. He further alleged that the matters stated as constituting part of the consideration were omitted from the note or the subscription through fraud or mistake, and he now insists that he be permitted to cancel his subscriptions and the notes executed in payment thereof because of the facts alleged. This defendant also sought to put in issue the fact of the company being insolvent or that its indebtedness exceeded its assets other than stock subscriptions.

The answer of the defendant Copley relied upon some of the matters alleged in the answer of Preston, except that he was not promised a fat salary as agent in charge of another branch office to be established at the place of his residence; neither did he question the solvency of the corporation, but he relied upon the additional allegation that after he had executed his notes the president of the company agreed with him in consideration that he pay a part of them to cancel and surrender to him the note upon which he is sued; that he made the payment but the note was not surrendered to him, although he afterwards labored under the impression that it was cancelled and that he was no longer liable. Each of the defendants also alleged that no stock was ever delivered to them, and through want of knowledge or information sufficient to form a belief they denied that any was ever issued. To each of the answers

as amended demurrers were sustained, and defendants declining to plead further judgments were rendered against them for the sums sued for, and questioning the correctness of those judgments they each prosecute this appeal.

Before considering other defenses it might be well enough to dispose of the last one referred to, i. e., that no stock was issued, or, if so, none delivered to the defendants. The notes, as well as the subscriptions for the stock, are filed as exhibits, and the latter show that the stock to be issued should be in lien to the company as security for the payment of the subscription, and the notes expressly show that the certificates of stock were held by the company as collateral security for the indebtedness. This would at least account for the fact that no certificate was delivered to either defendant, since it was retained by the company until the indebtedness was paid. But disregarding this, the rule is well settled that in a suit to recover calls for subscription to stock the fact that no certificate had ever been issued by the company furnishes no defense. Setting forth this rule, it is stated in Thompson on Corporations, 2 ed., vol. 1, sec. 774, that: "Hence it may be stated as a general rule that the mere failure to issue a certificate does not release the subscriber and is no defense by him to an action on his subscription."

The reason for the rule as stated by the author of that work and other authorities is that the issuance of a certificate is not necessary to the completion of the transaction, the certificate being only evidence of the ownership of the stock. The owner's rights as a stockholder are just as great without the issual of a certificate as with it, the only difference being that in some instances he might have greater difficulty in establishing the fact that he was in truth a stockholder. This rule has been recognized by this court in the cases of Wright v. Shelby Railroad Company, 16 B. Mon. 4; Shelbyville Trustees v. Shelbyville & E. Turnpike Co., 2 Met. 54, and Smith &c. v. Gower, 2 Duv. 17.

Turning now to the other defenses which it is alleged constituted fraud in the procurement of the subscriptions and the execution of the notes, we find the rule to be that the alleged defrauded subscriber in such cases must move within a reasonable time after the opportunity to discover the fraud to obtain relief either

by reformation of his contract or a cancellation of it, else he will be guilty of laches which will deprive him of the benefits of the alleged fraud. This is peculiarly and especially the rule after the corporation has become insolvent and is in process of liquidation for the purpose of collecting its assets and disbursing the proceeds among those entitled thereto. This is true whether the liquidating process be a voluntary one such as an assignment for the benefit of creditors, or whether it results from a court proceeding instituted for that purpose, as in the case of the appointment of a receiver at the instance of one having a right to do so. These general rules governing the right of a subscriber for the stock to avail himself of fraud practiced upon him in obtaining his subscription when sued thereon are of universal recognition, and will be found stated in 29 Amer. & Eng. Ency. of Law, pages 937-9; 10 Cyc. 421-423; 7 R. C. L. 238; Reid v. Owensboro Savings Bank & Trust Company's Receiver, 141 Ky. 444; Robertson v. Owensboro Saving's Bank & Trust Company's Receiver, 150 Ky. 50; Little v. Same, *idem.* 331. These authorities, and especially the cases referred to from this court, hold that if the shareholder has been vigilant in discovering fraud and has been guilty of no laches in taking the necessary steps to obtain relief from it, he will not be denied the defense, although proceedings may have been instituted for the purpose of winding up the affairs of the corporation because of its insolvency. But the cases from this court further hold that if the delay on the part of the shareholder to bestir himself to discover the fraud and to obtain relief because of it has been such as to charge him with laches, he can not, as against the rights of creditors of an insolvent corporation, rely upon the fraud as a defense in a suit to collect his subscription or a note executed therefor. In the Reid case, *supra,* the defendant, who was the sued stockholder, in support of his defense of fraud (which is similar to that urged here) relied upon the case of Kentucky Mutual Investment Co. v. Schaefer, 120 Ky. 227, but the court declined to apply the rule announced in the Schaefer case because the defendant therein had subscribed for his stock only a few months before the corporation went into liquidation, and it was held that there was a failure to show want of vigilance on his part and he was not chargeable with laches in failing to discover the fraud or proceed-

ing to correct it before the winding up process of the corporation commenced.

In the Reid case the defendant had subscribed for some of his stock in the bank more than two years before it became insolvent, and for a part of it not more than one year before that time (here the subscriptions were made from three to five years before), and it was held that the time was sufficient to afford a reasonable opportunity for investigation to discover the fraud and to take such steps as may have been deemed necessary to obtain relief from it. In denying the defense there urged, and similar to the one presented here, this court in that case summed up its conclusions thus:

"In brief, our conclusion is that when a stockholder has been induced by the false or fraudulent representations of the officers of a corporation to purchase its stock he may during the solvency of the corporation, if the action is brought within a reasonable time after the fraud is discovered and before the statute of limitation has barred it, have a rescission of his contract upon equitable terms or recover the loss sustained by the fraud. But if the corporation is insolvent when the action for rescission or other relief is brought, or if proceedings have then been instituted to liquidate its affairs on the ground of insolvency, and the rights of creditors will be affected, the shareholder who has been induced by fraud or misrepresentation to purchase stock cannot obtain relief from his contract unless he became a stockholder so shortly before the insolvency as not to have had reasonable time or opportunity to investigate its affairs and discover the fraud, nor unless upon the discovery he without delay asserts his right to appropriate relief. Having this view of the question, we think the lower court properly refused to permit the shareholders to rescind their contracts. Scott v. Deweese, 181 U. S. 203, 45 L. Ed. 822; Scott v. Abbott, 160 Fed. Rep. 573; Bacon, 86 Fed. Rep. 553; Wallace v. Hood, 89 Fed. Rep. 11."

The reasons for the rule are clearly set forth in that case and others from this court following it and referred to above, and they need not be repeated here. Suffice it to say that they are based upon wholesome and sound equitable principles, one of which is that if a loss occurs it should be borne by the one who is the most culpable and not by the one who was induced by appear-

ances to alter his position, which appearances were permitted to exist by the non-vigilant subscriber failing to take steps within a reasonable time to correct them. Moreover, it is a rule of equity not to encourage stale claims, even though they may not be barred by the statute of limitations, especially when to do so would work a loss to innocent parties who relied on the non-existence of such claims, being induced to do so through laches of the one seeking to rely upon them. This rule is stated by this court in the case of Culton v. Asher, 149 Ky. 659, in this language: "If one fails to bring his suit until after the expiration of the period prescribed by the statute of limitations, he is necessarily barred from maintaining his action; but he may, nevertheless, in certain cases in equity, be barred by laches, if he delays for a period much shorter than the statutory period of limitation, to bring his case promptly or to prosecute it diligently. The reason for the application of the doctrine of laches to cases of rescission for fraud is that the failure of the party defrauded to act promptly is conclusive evidence of his ratification of the contract; the doctrine of laches thus becoming a part of the equitable remedy in such cases.

"In Chase v. Chase, 20 R. I. 203, the doctrine of laches was defined as follows:

"'Laches, in legal significance, is not a mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he can not be restored to his former state, if the rights be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.'"

Neither can the defense that other stockholders were released from their indebtedness growing out of their subscriptions for stock avail the defendants in this case. Cook on Corporations, 6 ed., vol. 1, sec. 191; and mismanagement of the corporate affairs is equally devoid of

merit as a defense. Oldham v. Mt. Sterling Improvement Co., 103 Ky. 529. Were it not for the authorities referred to it would at once be manifest that such defenses could not prevail in equity, especially as against the rights of creditors who are strangers to the corporation and have no part nor lot in its management. If the officers in charge of the corporate affairs are derelict in their duty in the particulars mentioned, they are agents of the stockholders and not of the creditors, and the former may be appropriate proceedings obtain relief therefor, but they may not be permitted to shelter behind such actions as a defense to the payment of their subscriptions when called upon by one authorized to do so for the benefit of creditors.

What we have just said also applies to the defense interposed by the defendant Copley, that such officers and agents attempted to release him from his obligation by promising to surrender his notes. In the first place we fail to find any consideration for that promise, but if one existed as between the corporation and the answering defendant it could not be permitted to prevail in this case where the rights of creditors are involved, for it would be a manifest fraud upon them and would permit through possible collusive action between the officers and stockholders an entire dissipation of the corporate assets at the expense of the creditors. As well might it be contended that a corporation might surrender all of its assets to its stockholders, and when the latter would be called upon by the creditors to account for the assets for them to defend upon the ground that they held the assets under an agreement with and consent of the corporate officers as a gift or donation. No court would tolerate such a defense, and the one here relied upon is equally untenable.

But it is insisted by the appellant Preston that he by his answer put in issue the fact of the insurance company being insolvent. However, that question was passed upon in the receivership proceeding, in which case these suits by the receiver against the appellants are filed, and it might be successfully argued that the court would presume the corporation to be insolvent from the fact of the appointment of the receiver. But, waiving that question, the correctness of the order appointing the receiver is not drawn in question by either of the defendants, and when we examine the pleadings of the appellant

Preston, wherein he attempts to deny the indebtedness of the corporation, we find that the reason why he says that it is not indebted to the extent of insolvency is because ''large sums of money belonging to said corporation have been falsely, fraudulently and feloniously paid out to its said directors, officers and agents, and have never been accounted for, which said items of money are now due said corporation by its said directors, officers and agents, and which sums are more than sufficient to pay off the just debts of the said Central Life Insurance Company and leave a surplus in the hands of a receiver,'' &c.

We have already referred to the fact that mismanagement of the affairs of the corporation whereby its assets have been wrongfully paid out constitutes no defense for the reasons which we have stated, and clearly it cannot under any rule known to us be insisted that the receiver would first have to exhaust the remedies of the corporation against the officers to whom payments were wrongfully made before he could proceed against the stockholders to collect their subscriptions. Moreover, this is an insolvency proceeding. Other stockholders have no doubt paid their subscriptions in full and are entitled to be made equal with those who have paid nothing. It is the duty of the receiver to equalize these matters between the stockholders, as well as to pay the debts of the corporation to its general creditors, and if after the latter are taken care of anything remains it would be the duty of the receiver to distribute it equally between the stockholders. We therefore conclude that the defense now under consideration is not available under the facts disclosed by the record.

It is further insisted that if the defendants are liable at all they are liable only for the par value of the stock, as clearly the amount above that sum agreed to be paid was superinduced by fraud. This, however, carries us back to the proposition hereinbefore discussed. The creditors are presumed to have become such because of the information which they possessed in regard to what constituted the assets of the corporation. Part of those assets were the notes of these defendants to which from all appearances no defense existed, and it is now too late to make this complaint in this proceeding, which is primarily for the benefit of creditors.

Lastly, it is insisted by the defendant Preston that the consideration for his signing the note and subscribing for the stock was the promise to establish the branch office at his home, and to place him in charge at a salary of $3,600.00 per year. This is a matter that could be well classified under the general head of fraud, which we have already discussed. He alleges that this part of the contract which he claims constituted the consideration moving between him and the company was omitted from the contract through fraud or mistake, and he cites many authorities to the effect that it is competent to reform a contract under such circumstances so as to make it speak the truth. He, however, in this record stands in the same attitude in this regard as does a subscriber guilty of laches in failing to rescind his contract for fraud. In other words, by analogy the same rule applies with reference to a reformation of a contract as applies to a rescission of one. In 34 Cyc., 966, in discussing the application of the doctrine of laches as applicable to the reformation of a contract, it is said: "Laches consist in undue and unaccounted-for delay, and what constitutes delay sufficient to bar reformation must be determined by the facts of each case and the principles of equity. If, relying on the instrument containing the mistake (or fraud), others have acted upon the worth of it, a very short delay may constitute laches." See also, Duff v. Rose, 149 Ky. 482, and Culton v. Asher, *supra.*

In this case Preston's notes were executed something over two years after he subscribed for the stock. He not only had ample opportunity to discover the fraud, but each day furnished him additional evidence that the alleged promise which he now says constituted the consideration was being violated by the company. Neither he nor Copley received any dividends, and they appear to have been willing to recline upon a couch of ease until the day came when the company would "cut the melon." In the meantime policies were being issued, which they must have known; deaths were occurring, and debts accumulating. Neither of them took action of any kind, and although they might have been repeatedly assured that the harvest day would some time in the future arrive, this furnished no excuse for their complete passiveness because of which perhaps some of the liabilities of the company were contracted and creditors deceived into becoming such.

Upon the whole case we are convinced that the court properly disposed of the case, and the judgment is affirmed.