## Levassor, et al. v. Metropolitan Fire Insurance Company's Receiver.

(Decided March 26, 1920.)

### Appeal from Kenton Circuit Court
### (Common Law and Equity Division).

1. Corporations—Insurance Companies—Subscription Contracts—Business—Right of Insurance Company to Take Stock Subscriptions and to Do Business Before Obtaining Certificate from Insurance Commissioner.—Since, by sections 621 and 622, Kentucky Statutes, the Insurance Commissioner is prohibited from issuing to an insurance corporation a certificate authorizing it to do business until the minimum amount of the capital stock named in the articles of incorporation has been subscribed and actually paid in, and until he has ascertained whether or not it has invested in the proper funds, or manner, the requisite amount of its premiums or capital stock, the limitation on the right of a corporation to do business until the requisite permission is obtained is confined to the business of insurance, and does not apply to the taking of stock subscriptions, or the making of preliminary contracts necessary in order to get the certificate authorizing it to do an insurance business.

2. Corporations—Insurance Companies—Subscription Contracts—Validity—Effect of Failure to Get a Certificate Authorizing it to Do Business—Effect of Receivership.—Since an insurance company may make a valid contract of subscription, and may incur indebtedness for certain purposes before it is authorized to do an insurance business, a stock subscriber's liability, so far as creditors and those occupying the place of creditors are concerned, is not affected by the failure of the company to secure from the Insurance Commissioner a certificate authorizing it to commence business as an insurance company, or by the fact that the company went into the hands of a receiver, and the original project was abandoned.

3. Corporations—Subscrpitions to Corporate Stock—Fraud—Laches.—Unless it appears that the stockholder acquired his stock such a short time before the insolvency of the corporation that he did not have a reasonable opportunity to investigate its affairs and discover the fraud, the defense that a subscription was obtained by fraud is not available in a suit by the receiver to collect the

subscription price for the benefit of creditors, and where the stockholder had about two years within which to discover the fraud and ask a rescission of the contract of subscription and failed to do so, the defense of fraud cannot be maintained.

4. Corporations—Subscriptions to Corporate Stock—Liability of Stockholders for the Costs and Expenses of Administering the Estate Including Counsel Fees and Compensation of Receiver.— Stockholders are liable on their unpaid subscriptions for the costs and expenses of administering the estate, including counsel fees and compensation of the receiver, not only for services rendered in protecting the estate, but for services rendered in suits against stockholders to collect assessments.

5. Corporations—Subscriber's Liability.—Under Kentucky Statutes, section 547, making stockholders liable to creditors for the full amount of the unpaid part of stock subscribed by them, the measure of the stockholder's liability to creditors, where he agrees to pay more than par, is the contract price, and not the par value of the stock.

6. Receivers—Compensation—Allowance for Attorneys' Fees—Considerations Which Should Control in Fixing Receiver's Compensation and Counsel Fees.—The considerations which should control in fixing the receiver's compensation and counsel fees are the value of the estate, and the character, extent and result of their efforts in protecting and enforcing the rights of the estate.

7. Receivers—Compensation—Allowance for Attorneys' Fees.—In an insurance company receivership, allowances of $6,000.00 to the receiver, of $7,000.00 each to two attorneys, and of $3,500.00 to a third attorney, held excessive and that the receiver should have been allowed $4,000.00, the two attorneys $2,000.00 each, and the third attorney $1,000.00.

S. D. ROUSE, MYERS & HOWARD and JOHN T. MURPHY for appellants.

M. L. GALVIN, S. L. BLAKELY and EDWARD J. TRACEY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On the application of two stockholders, the Metropolitan Fire Insurance Company was placed in the hands of a receiver by the Kenton circuit court, and on appeal the judgment was affirmed. Metropolitan Fire Insurance Company v. Middendorf, 171 Ky. 771, 188 S. W. 790.

On investigation by the receiver it was found that practically all the assets of the corporation had been dissipated. Thereupon, the receiver instituted and defend-

ed certain actions, and compromised other claims against the company. On January 28, 1918, the unpaid debts of the company were reported to be $2,534.87, while the estimated court costs were $154.95, making a total of $2,689.82. At that time the receiver had in his hands $3,463.80 in cash, and securities worth about $2,890.00, or total assets of $6,353.00. After this report, the receiver and his attorneys, as well as the attorneys who resisted the receivership proceedings, applied to the court for reasonable allowances for their services. The receiver had three attorneys, two of whom were allowed $7,000.00 each, and the third $3,500.00. The receiver himself was allowed $6,000.00, while the attorneys who resisted the receivership proceedings were allowed the sum of $1,800.00, thus making a total allowance of $25,300.00.

In making these allowances the court made an assessment of fifty per cent against all stockholders who had paid nothing on their subscriptions. Thereafter, the receiver reported that he could not collect from persons, against whom the fifty per cent assessment was made, a sufficient amount of money to pay the fees and costs of the receivership, and asked the court to make a supplemental assessment of twenty per cent. Pursuant to this request, the court made the assessment and rendered judgment against Louis E. Levassor for $20,000.00, F. Roudebush for $250.00, and John S. Shulte for $1,000.00, and they appeal.

The articles incorporating the Metropolitan Fire Insurance Company were filed with the Secretary of State on April 2, 1914. The capital stock was fixed at 25,000 shares of the par value of $10.00 each. On April 25, 1914, the incorporators were authorized by the insurance commissioner to open books for the subscription of stock. By resolution of the board of directors the stock was offered for sale at $20.00 a share. Under the plan adopted for the sale of the stock, the purchasers paid one-half in cash and executed a note for the other half, secured by a pledge of the stock. The company was never able to secure permission from the Insurance Commissioner to conduct an insurance business. Almost two years elapsed between the time appellants contracted for their stock and the appointment of the receiver. In the meantime they never took any action to have their contracts of subscription rescinded, but offer many rea-

sons why they are not liable on the assessments made by the chancellor. These objections will be considered in the following order:

(1) The chancellor found that all of the original capital stock was fully subscribed, and we see no reason to disturb his finding. That being true, it is unnecessary to determine how the liability of the appellants would have been affected if the full amount of the capital stock had not been subscribed.

(2) Section 617, Kentucky Statutes, authorizes the organization of insurance companies, section 618 provides what the articles of incorporation shall specify, and section 619, how they shall be executed and recorded. Section 620 provides in substance that when the articles of incorporation are properly filed and the corporation is so authorized by the commissioner of the insurance department, by a certificate issued under his seal of office, it may commence business, etc. Section 621 provides that before the commissioner shall issue the certificate mentioned in the preceding section, he shall submit the articles to the attorney general for examination, and shall examine, or cause the affairs of the corporation to be examined, for the purpose of ascertaining whether or not it has complied with all the requirements of the law, and has invested in the proper funds, or manner, the requisite amount of its premiums or capital stock. Section 622 provides that no stock company shall be authorized to commence business until the minimum amount of the capital stock named in the articles of incorporation has been subscribed and actually paid in. Section 623 provides that when the articles of incorporation are filed in the proper offices, the commissioner of insurance shall designate the incorporators, or a majority of them, to open books for the subscription of stock until the requisite amount has been subscribed. Since the insurance commissioner is prohibited from issuing to a corporation a certificate authorizing it to do business until the minimum amount of the capital stock named in the articles of incorporation has been subscribed and actually paid in, and until he has ascertained whether or not it has invested in the proper funds, or manner, the requisite amount of its premiums or capital stock, it necessarily follows, we think, that the limitation on the right of a corporation to do business until the requisite permission is obtained is confined to the business

of insurance, and does not apply to the taking of stock subscriptions, or the making of preliminary contracts. A contrary view of the statute would make it impossible to organize an insurance company, since it could never do the things absolutely necessary in order to get a certificate authorizing it to do an insurance business. From these considerations, it necessarily follows that a company may make a valid contract of subscription, and may incur indebtedness for certain purposes, before it is authorized to do an insurance business, and that being true, a subscriber's liability, so far as creditors and those occupying the place of creditors are concerned, is not affected by the failure of the company to secure from the insurance commissioner a certificate authorizing it to commence business as an insurance company, or by the fact that the company went into the hands of a receiver and the original project was abandoned. 14 C. J., pp. 1097, 1098, and 1099; Calor Oil Company v. Franzell, 128 Ky. 727; Louisville Banking Company v. Eisenman, 94 Ky. 83.

(3) Unless it appears that the stockholder acquired his stock such a short time before the insolvency of the corporation that he did not have a reasonable opportunity to investigate its affairs and discover the fraud, the defense that the subscription was obtained by fraud is not available in a suit by the receiver to collect the subscription price for the benefit of creditors. Preston v. Jeffers, 179 Ky. 384, 200 S. W. 654; Reid v. Owensboro Savings Bank & Trust Co., 141 Ky. 444, 132 S. W. 1026. Here, appellants had about two years within which to discover the fraud and ask a rescission of their contracts of subscription, but failed to do so. That being true, the defense of fraud cannot be maintained.

(4) Under such circumstances, the stockholders are also liable for the costs and expenses of administering the estate, including counsel fees and the compensation of the receiver, not only for services rendered in protecting the estate, but for services rendered in suits against stockholders to collect assessments. Fletcher's Cyc. of Law of Private Corporations, section 4101; Rosoff v. Gilbert Transp. Co., 221 Fed. 972; Berry v. Rood, 225 Mo. 85, 123 S. W. 888; McDermott v. Woodhouse, 87 N. J. Eq. 615, 101 Atl. 375.

(5) Under our statute the stockholders of a corporation are liable to creditors "for the full amount of

the unpaid part of stock subscribed by them." Kentucky Statutes, section 547. And where the stockholder agrees to pay more than par, the measure of his liability is the contract price, and not the par value of the stock. Stoecker, et al. v. Goodman, et al., 183 Ky. 330, 209 S. W. 374; Preston v. Jeffers, *supra*. It therefore follows that appellants are liable to creditors, and others occupying the attitude of creditors, to the extent of $20.00 a share.

It remains to determine whether the allowances made to the receiver and his attorneys, and to the attorneys who resisted the receivership, are reasonable. The services performed by the receiver and his counsel may be summed up as follows: (1) The insurance company had a contract with the Metropolitan Trust Company for the sale of its stock. The Metropolitan Trust Company went into bankruptcy and asserted a claim of about $30,000.00 against the insurance company. The receiver and his counsel devoted some time to the investigation of the claim, and concluded that the alleged indebtedness of the insurance company to the trust company was not valid, and that the trust company was indebted to the insurance company in the sum of about $9,000.00. The receiver and his counsel made six or eight trips to Louisville, and spent several days there during the examination of the bankrupt before the referee in bankruptcy. They succeeded in defeating the claim of the trust company against the insurance company, and in establishing the insurance company's claim of $9,000.00 against the trust company. The latter claim, however, is not collectible.

(2) The fire insurance company had purchased a building in Louisville, and assumed a mortgage thereon of $95,000.00 and ground rental of $11,500.00 per annum, besides agreeing to pay all taxes thereon and to build an addition to the building, for which it was to pay $15,000.00 of its capital stock. The contingent liability on this claim was about $50,000.00. After several days spent in investigation and discussion, the claim was compromised for about $4,900.00. (3) Suit was brought against L. E. Levassor to recover certain securities of a face value of $12,000.00, but judgment was rendered in favor of Levassor. (4) Suit was brought against F. J. Hernes to recover certain securities and this action resulted in the receiver's collecting about $3,900.00. (5)

A bank at Elizabethtown brought suit on a $1,000.00 note, secured by a collateral note of L. E. Levassor to the fire insurance company in payment for his stock. This suit was contested, but the litigation resulted favorably to the bank. (6) A great deal of time was spent by the receiver in investigating the affairs of the company, and much work was done by him and his counsel in endeavoring to collect the assessments, and this work is not included.

The considerations which should control in fixing the receiver's compensation and counsel fees are the value of the estate, and the character, extent and result of their efforts in protecting and enforcing the rights of the estate. If the actual assets of the estate, including those brought in by the efforts of the receiver and his counsel, had constituted a substantial portion of the nominal assets of the company, we would not consider the allowances unreasonable, in view of the fact that the receiver and his counsel were required to do a great deal of work. As a matter of fact, however, the entire assets did not amount to more than $12,000.00 or $15,000.00. Not only so, but the contingent claim of $50,000.00, which was compromised for $4,900.00, and the claim of the trust company for about $30,000.00, were not of a very substantial character. In addition to their services with respect to these claims, the receiver and his counsel recovered certain bonds worth about $4,000.00, and defended an action for $1,000.00, which they lost. Should we uphold the allowances made to the receiver and his counsel under these circumstances, the result would be to impose upon the stockholders an actual burden far in excess of any benefit which the estate derived from the efforts of the receiver and his counsel. We therefore conclude that the allowances are excessive, and that the compensation of the receiver should have been fixed at $4,000.00, while the two attorneys, who received $7,000.00 each, should have received $2,000.00 each, and the third attorney, who received $3,500.00, should have received $1,000.00. We also conclude that the allowance made to the attorneys who resisted the receivership proceedings should have been fixed at $1,000.00 instead of $1,800.00. Of course, the assessments made against the stockholders should conform to these allowances.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.