## Ohio Valley Banking & Trust Company et al. v. King et al.

## Henderson National Bank et al. v. Lee Baskett's Creditors' Committee et al.

## Lee Baskett's Creditors' Committee v. King et al.

(Decided May 5, 1931.)

714

In the first two appeals:

JOHN C. WORSHAM for appellants.

VANCE & HEILBRONNER for appellees.

In the third appeal:

VANCE & HEILBRONNER and PENTECOST & DORSEY for appellants.

JOHN C. WORSHAM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing in part and affirming in part.

In September, 1924, Lee Baskett, whose gross estate was estimated at nearly a million dollars, under an agreement with substantially all of his creditors, conveyed his property to a committee of three men who were vested with such powers as seemed sufficient to manage and dispose of the estate in order to liquidate Baskett's indebtedness. Within a month the committee filed a petition for advice of the chancellor. Three years thereafter, while the committee's suit was pending and active, the appellants, Ohio Valley Banking & Trust Company and certain other creditors,—some of whom were not parties to the agreement—filed a suit against Baskett, his committee, and other creditors asking for the appointment of a receiver. Their motion was sustained, but it was held on appeal that the allegations of the petition were insufficient to authorize the order. Baskett v. Ohio Valley Banking & Trust Co., 224 Ky. 29, 5 S. W. (2d) 473. A reference to that opinion will be necessary for a full understanding of this one.

Upon the return of the case, the order appointing the receiver and substituting him for the committee was set aside, and an amended and supplemental petition was filed alleging facts for the want of which we held the original petition was bad on demurrer. These charges

were in effect that the committee was guilty of mismanagement, negligence, and other specified breaches of trust. It was further set up in behalf of the Soaper heirs, who were shown in the first opinion to be then only contingently liable upon certain obligations of Baskett, that the land in the disposal of which they were financially concerned had been sold under a judgment (also referred to in the opinion) for $12,500, which was $7,529.26 less than the mortgage debt, for which sum they were liable, and it was charged that their liability or loss would continue to increase under the committee's management of the estate. The two suits were consolidated by the court at his own instance.

Issues were joined, and, after trial, the court overruled the renewed motion for a receiver, and dismissed the petition of the complaining creditors because it was of the opinion that neither bad faith nor mismanagement such as would authorize their discharge had been proven. The court allowed an additional fee to $5,000 to the attorneys for the committee, and additional compensation of $3,360 to the committee for services to be referred to. The Ohio Valley Banking & Trust Company and the Soaper heirs appeal from that judgment. The case is brought here under two titles, the second one apparently because it was so styled below. Two of the committee members appeal from so much of the judgment rendered in the suit filed by the committee as allowed a fee to the receiver, and directed its payment out of the estate. That is the third styled appeal.

A motion has been made and argued by appellees in the first case to dismiss the appeal on the ground that the separate interests of the appellants, except the Ohio Valley Banking & Trust Company, in the fund involved, is less than $200, and this court is without jurisdiction to entertain the appeal. The proportion of the fees attacked which would inure to the Banking & Trust Company if set aside is sufficient to give us jurisdiction. The court has had analogous conditions and motions heretofore, and held that the amount involved on appeal is the sum sought to be recovered into the insolvent estate for the benefit of all the creditors. Lapp & Flersheim v. Clark's Adm'r, 85 S. W. 717, 27 Ky. Law Rep. 452; Singletary v. Boerner-Morris Candy Co., 129 Ky. 556, 112 S. W. 637.

In Commonwealth for Wiggins, etc., v. Scott, 112 Ky. 255, 65 S. W. 596, 23 Ky. Law Rep. 1488, 55 L. R. A. 597,

we have a discussion of the character and nature of a suit by a taxpayer, essaying to sue for all similar taxpayers, and the principle and conclusion that a trust fund is involved which gives the appellate court jurisdiction, although the individual taxpayer is not personally interested in a sufficient amount.

In Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992, 993, a fraudulent conveyance case, it is observed (citing Williams' Ex'r v. Chamberlain, 123 Ky. 150, 94 S. W. 29, 29 Ky. Law Rep. 606) that, where some of the creditors have claims which singly are large enough to give jurisdiction, the others with insufficient sums involved have the right to have their claims adjudicated on the appeal, although, title to land being involved, the court had jurisdiction anyhow.

The amount involved on this appeal is the total of the fees attacked, and sought to be recovered. The court, therefore, has jurisdiction, and the motion to dismiss the appeal is overruled.

■ The real complaint here on the first mentioned appeal is that the court erred in making the additional allowances to the committee and its counsel. It is claimed that the settlement of the estate should have been had in the suit filed by the appellants instead of that filed by the creditors' committee; that the committee had forfeited their right to compensation and to have their counsel paid by the estate because of their mismanagement of it. The allowances are also attacked as excessive.

A voluminous record has been brought to us disclosing the activities and accounts of the committee covering a period of five years and involving the management and disposition of large farms and holdings in Missouri, Mississippi, and Kentucky. The principal criticisms of the committee are leveled against their failure to dispose of the property promptly upon their appointment in 1924, which resulted in large losses; the unjustified defense of several suits against them and the institution of others; the lease of the home farm (as it is called) to Lee Baskett's son, who was at the time one of the three members of the creditors' committee; and the indirect sale of it to Lee Baskett, who had succeeded his son on the committee.

No effort was made to hold the committee personally accountable for losses charged to have resulted from the alleged breaches of trust. The appellants only urge that no additional compensation should be allowed because of

the forfeiture of their right, and because the settlement, with the approval of the court, was that sought by their suit, and was the result of their efforts. They claimed below that a reasonable fee should be allowed their counsel, but that claim has been abandoned here.

The court has gone very carefully into the record relating to the acts of the committee and all the various specific charges of mismanagement. It would not be of value to detail them. Sufficeth it to say that the large losses were such as were common to landowners throughout the country during the period from 1924 to 1930 by reason of the deflation and decline in sale values. The committee was not required to exercise any greater perspicacity or better judgment than that exercised by business men of ordinary prudence. It is common knowledge that during those times the best of business men anticipated an improvement in conditions; but the adverse tide continued to ebb. While subsequent events proved the committee's judgment erroneous and their hopes futile, in the circumstances they should not be held accountable for the loss thereby sustained. We cannot say that the suits in which the estate was involved were frivolous or so lacking in merit as to penalize the committee or counsel. And, while the leasing of the home place to a member of the committee, who was the debtor's son, was not in conformity to the strict rule that trustees should not deal with themselves individually (see Clay v. Thomas, 178 Ky. 199, 198 S. W. 762, 1 A. L. R. 738), a consideration of all the circumstances and conditions, and the results, do not show that any loss or damage was suffered or done to the estate by reason of the transaction. It was a crop-rent lease, and it is not shown that a better one could have been made with another.

Efforts had been made to dispose of the debtor's valuable home property without success. An offer was submitted to a meeting of the creditors by George Posey to buy the farm, paying $7,000 in cash and the balance in four or five years. It seems that Lee Baskett, who was a member of his own creditors' committee (with their consent), was secretly interested with Posey, the transaction, if consummated, to be financed by James Ellis. The offer was not acceptable to the creditors because of the extended time and their desire for an early settlement of the estate. Thereupon an offer of Ellis to pay $55,000

in cash was accepted by vote of all of the creditors except the appellants, who opposed it. It appears that, unknown to the creditors, or many of them, there was an oral agreement between Ellis and Baskett that the latter might buy the property from him at the same price later on if he could raise the money. This oral agreement is the basis of the charge that the sale was irregular and void under the rule respecting the duties of trustees just alluded to. The same observations may be made with respect to this transaction as to the other. The price received seems to be but a fraction of the real value of the property, but the committee was charged with closing the estate within five years, and it does not appear that any better sale was at the time possible. The order of court approving the sale recites that it was with the agreement of the parties.

While it appears that the estate might have been more economically and efficiently managed, and some of the transactions justify criticism, we concur in the decision of the chancellor that the members of the committee were not guilty of such conduct as forfeited their right to compensation or to additional compensation. Although it is the rule that, when those interested in an estate secure its settlement, and their action inures to the benefit of others, they should be allowed their costs including counsel fees, that rule is subject to qualification. Thus a creditor who, without cause other than a desire to realize on his claim, forces such a settlement, is not entitled to his attorney's fee. Hall v. Metcalfe, 114 Ky. 886, 72 S. W. 18, 24 Ky. Law Rep. 1660; Girty v. Girty's Adm'r, 180 Ky. 786, 203 S. W. 730.

The right of administration and settlement primarily belongs to those appointed or chosen. This committee, charged with heavy responsibilities in the settlement of this large and varied estate, properly and promptly sought the advice of the court. Their petition stated that that advice would be asked from time to time. Their case was actively pending at the time the creditors brought their suit seeking a settlement on the theory that the conveyance to the committee was in reality an assignment for the benefit of the creditors. That claim was disallowed. The appellants invoked the aid of the court to secure them in the realization of their claims against the estate and in an effort to control its disposition. We mean no implication of criticism of their action, but

mean simply that they were protecting their own interests. It was therefore proper, under the doctrine of contribution, that the committee be allowed their costs and counsel fees.

The litigation has extended over a period of more than six years. It has involved large and many transactions. The agreement with the creditors provided that the committee should employ Hon. Robt. D. Vance as their attorney. While in an instance or two the committee as a unit was represented by other counsel because of conflicting interests of one of its members, we find no merit in the assertion that Vance & Heilbronner are not to be. considered as counsel of the committee.

These settlement matters required time and ability on the part of counsel; and, except for the fact that there was comparatively little for distribution among the unsecured creditors—due primarily to the decrease in farm values and a disastrous flood throughout the county where the land was located (nearly all of it being Ohio and Mississippi river islands and bottoms)—no one would question the amount of the fees. The attorneys had received on their account $3,000. In the end, the court allowed them $5,000 more. We do not regard the fee excessive.

It was stipulated in the creditors' agreement that one member of the committee should be paid $200 a month for actively looking after the estate. He was also allowed by the committee $35 a month for the use of his automobile. At the first creditors' meeting, a report of the committee was submitted and approved, which contained the record of 5 per cent. commission on receipts retained by the other two members of the committee. The monthly salary after three years, when some of the farms had been disposed of, was reduced to $160. The aggregate so paid this member was about $10,000. The allowance for his automobile aggregated about $1,400. Other than the proceeds from the sale and conveyances to be stated, the gross receipts were approximately $103,000, on which the committee received commissions of $5,150. No complaint is here made of those allowances, totaling $16,550. It is the additional compensation that is objected to.

Certain lands were conveyed to lienholders for the amount of their secured claims aggregating $226,000. The court allowed the committee 1 per cent., or $2,260, for their services in negotiating those settlements and

making deeds. When we consider that one member of the committee was receiving a salary for attending to the affairs of the estate, which had ceased to demand much attention, and give consideration to other circumstances, we regard $1,500 as ample compensation for this transaction.

In the sale of the home farm to Ellis for $55,000, the court allowed the three trustees 2 per cent. for making the sale and the two who were receiving no salary 3 per cent. for handling the money, a total of $2,750. It seems to us that a total of 3 per cent., or $1,650, is sufficient.

The gross estate was very large and the holdings extensive, but it must not be overlooked that, during the period in which this property was in the hands of the committee, it greatly depreciated in value, and the creditors suffered great loss through no fault of theirs. But it does appear that the appellants had endeavored to secure such a settlement and disposition of the property long before, and the committee did not then favor it. The entire sum available for distribution among the general creditors will be about $42,000. They will receive about seven cents on the dollar. The court costs and administrative expenses have been heavy, and the committee should share with the creditors, whose agents they were, some of the burden.

In Levassor v. Metropolitan Fire Insurance Co.'s Receiver, 188 Ky. 23, 220 S. W. 752, 755, it is written:

"The considerations which should control in fixing the receiver's compensation and counsel fees are the value of the estate, and the character, extent, and result of their efforts in protecting and enforcing the rights of the estate."

The same considerations should apply under similar circumstances such as we have in this case.

We are of the opinion that the additional compensation allowed the committee—$5,010—should be reduced to $3,150. With the sums theretofore received, this will constitute liberal remuneration for their services.

The receiver appointed by the court at the instance of the Ohio Valley Banking & Trust Company and their co-plaintiffs served in that capacity for six months before his appointment was set aside in accordance with the mandate of this court. For his services, the chancellor allowed him compensation of $1,200. The

allowance is attacked by two members of the committee (the receiver having been the third one) because (1) his appointment was void, and hence he was not entitled to compensation; (2) no verified statement was filed showing his acts, as required by section 396 of the Statutes, and his compensation exceeded $3 a day provided by section 1740 of the Statutes for commissioners and receivers; and (3) if entitled to any allowance, it was chargeable against the plaintiffs who brought about his appointment.

The appointment of the receiver was not void, but erroneous. His acts were those of the court, whose officer and agent he was, until his appointment was set aside. In the allowance and allotment of costs incurred in the settlement of trust estates, the chancellor is given a broad discretion. Section 401 of the Statutes prescribes that allowances to receivers shall "in all cases, be taxed as part of the costs." Section 889 of the Statutes provides that in equity actions the successful party shall recover his costs, "but in actions . . . to settle and enforce trusts, courts shall have a judicial discretion in regard to costs."

The services of the receiver superseded for the time those of the committee. His reports, approved by the court, manifest proper diligence. The salary of the other member of the committee who was presumed to do the same work was suspended during this representative's incumbency, and it is proper that the estate should pay him. The committee, in seeking the approval and advice of the chancellor with regard to the transfer of the farms to the lienholders and sale of the home place, and asking for a reasonable compensation to the managing member of the committee, also asked that Mr. King be allowed $1,200 for his services as receiver. Should they now question that action of the court? None of the creditors are doing so. We need not enter upon a discussion of the rules and principles applicable, for they have been considered in the recent cases of Chiles v. Robinson, 224 Ky. 71, 5 S. W. (2d) 269; Crump v. First National Bank, 229 Ky. 526, 17 S. W. (2d) 436, 68 A. L. R. 872. Of pertinent application is Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002.

The court has uniformly construed the statutes referred to, providing that a commissioner or receiver should file a statement as to the number of days he has

acted and limiting the allowance to $3 per day, as not applying when the appointment contemplates and exacts unusual and extraordinary services in connection with his trust, and has declared that compensation in such cases is within the discretion of the chancellor. Fidelity Oil Corporation v. Southern Oil & Pipe Line Co., 197 Ky. 676, 247 S. W. 950. During six months the receiver served he filed three verified reports of his doings, and they show that the allowance of $200 a month was a reasonable and proper charge against the estate.

The first above-styled appeal is also captioned in the statement of appeal, "Henderson National Bank, et al., v. Lee Baskett's Creditor's Committee, et al." This was apparently done because in the original suit filed by the committee the Henderson National Bank was the defendant first named. The name of that bank does not appear in the body of the statement giving the names of the parties to the appeal, as required by section 739 of the Civil Code of Practice, and it has filed a motion to have its name stricken. The motion is sustained, and it may recover its costs against the appellants in the first named case.

The judgment in the appeal of the Ohio Valley Banking & Trust Company v. King et al., is reversed as to appellees King, Hopkins, and Baskett, with directions to reduce the allowance to the creditors' committee as indicated. It is affirmed as to appellees Vance and Heilbronner. The judgment in the appeal of Lee Baskett's Creditor's Committee v. King et al., is affirmed.

Whole court sitting.