## Reid v. Owensboro Savings Bank & Trust Co., et al. Roberts v. Owensboro Savings Bank & Trust Co., et al.

(Decided January 6, 1911.)

### Appeals from Daviess Circuit Court.

1. Corporations—Dividends.—Stockholders who have received dividends that the corporation was not authorized to pay may be required in an action brought by a receiver of the corporation to return them.

2. Stockholders—Right to rescind contract for purchase of stock.— When a person has been induced by the fraud and misrepresentation of the officers of a corporation to purchase its stock, he may maintain an action to rescind the contract and recover back the money paid for the stock, if the corporation is solvent; but if it is insolvent, and proceedings have been instituted to wind up its affairs, a stockholder who has been guilty of any laches will not be allowed a rescission to the prejudice of creditors of the corporation.

3. Receiver of Corporations.—The receiver or assignee of a corporation stands in the shoes of the corporation, and any defense that the shareholder could make against the corporation, or any action he could bring against it, he may make or maintain against the assignee or receiver.

4. Set Off—Right of Creditor of an Insolvent Corporation.—When a shareholder or other person is sued to recover a debt by a receiver of an insolvent corporation, he may set off against the claim any debt due to him by the corporation when it went into liquidation.

GEORGE W. JOLLY, for appellants.

R. S. TODD, R. A. MILLER, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing in the first styled case and affirming in the latter.

These two appeals present the same question of law, except in one particular, and will be disposed of together.

In January, 1906, the appellant Allen Reid bought of the appellee bank ten shares of its capital stock of the par value of one hundred dollars and paid therefor $1,500, and in January, 1907, he purchased of the bank forty shares of its capital stock of the par value of one hundred dollars, paying therefor $7,000.

The appellant M. L. Roberts in January, 1906, purchased from the bank four shares of its capital stock of the par value of one hundred dollars each, and paid the bank for it $600, and in July, 1906, she bought of James H. Parrish, president of the bank, six shares of its capital stock of the par value of one hundred dollars, for which she paid him $900.

In June, 1906, December, 1906, January, 1907 and December, 1907, the bank paid to appellant Reid on the stock held by him dividends aggregating $600, and to appellant M. L. Roberts on the stock held by her dividends aggregating $170.

In April, 1908, the bank becoming insolvent, a receiver was appointed, and actions were brought in December, 1908, against Reid and Roberts to recover from them the dividends paid, upon the ground that at the time of the payment of these dividends and each of them the bank was insolvent.

That the dividends were paid in violation of section 596 of the Kentucky Statutes is freely admitted, and so the right of the receiver to maintain an action to recover them is not questioned. Grant v. Southern Contract Co., 104 Ky. 781; Lexington, L. F. & M. Co. v. Page, 17 B. Mon., 412; Grant v. Ross, 100 Ky., 44; Cook on Stockholders, Vol. 1, section 548; 3 Thompson on Corporations, section 3555.

But for defense to the suit brought against him, Reid in his answer averred that in May, 1906, he deposited in and loaned to the bank $2,000, which amount was or should have been on deposit in the bank when it went into the hands of the receiver, and he pleaded this deposit as a set off and counterclaim against the action to recover the dividends. In addition to this defense made by Reid, he and M. L. Roberts pleaded that they were induced to and did purchase the shares of stock in the bank by the false and fraudulent representations as to the condition of the bank and the value of its shares of capital stock made by the president and officers of the bank. They averred that at the time they purchased the stock the bank was in fact insolvent, and that its condition was unknown to them. They each tendered to the receiver the shares of stock issued to them, and asked that the contract be rescinded and that they have judgment for the amount paid for the stock, less the dividends paid to them, or that the amount paid by them less the dividends be treated as a claim against the bank. As the real purpose of this defense was to obtain a rescission of the contract upon the ground of fraud, we will so treat it and not further allude to the doctrine of equitable set off presented in argument.

General demurrers filed to these answers were sustained by the lower court, upon the ground that the answers did not present a defense to the action, and declining to plead further, judgment was rendered against the appellants for the dividends respectively received by them.

We will take up and determine first the question of the right of the appellants to have a cancellation of the stock, and a judgment for the return of the money paid by them, less the dividends received. In disposing of this question it may be conceded that when the stock was purchased the bank was insolvent, and that neither of the appellants knew this fact. And further conceded that they were induced to and did purchase the stock by reason of the false and fraudulent representations as to the value of the stock made to them by the president and officers of the bank; and that they in good faith believed at the time of their purchase that the bank was a solvent and prosperous institution and its stock reasonably worth the amount paid for it, which was largely in excess of its par value. Assuming this much as true, it may further be admitted that if the bank had not gone into insolvency or the rights of depositors and creditors would not be prejudicially affected, these stockholders would have the right to a cancellation of their shares and a return of the money paid for them. As it is well settled that when a purchaser of shares of stock in a bank or other corporation is induced to make the purchase by reason of the false and fraudulent representations of the officers and directors of the corporation that the concern is solvent and the shares worth the amount at which they are offered to be sold, the purchaser may upon the discovery of the fraud, if action is brought within reasonable time, and during the solvency of the corporation, have a cancellation of the stock and a return of his money. Upon this point there is practical agreement among the authorities, as may be seen by an examination of Fear v. Bartlett, 81 Md., 435, 33 L. R. A., 721; and note; Chamberlain v. Trogden, 148 N. C., 139, 16 Am. & Eng. Annotated Cases, 177, and note; Dorsey Machine Co. v. McCaffrey, 139 Ind., 545; 47 Am. St. Rep., 290; Coles v. Kennedy, 81 Iowa, 360, 25 Am. St. Rep.. 503; Virginia Land Co. v. Haupt, 90 Va., 533, 44 Am. St. Rep., 939; Zang v. Adams, 23 Col., 408, 58 Am. St. Rep., 249; Kentucky Mutual Investment Co. v. Schaefer, 120 Ky. 227; Prewitt v. Trimble, 92 Ky., 176; Cook on Stockholders, secs. 151-165; Clarke and Marshall on Private Corporations, secs. 1478-1487.

But, the question here presented is, has a stockholder the right to this relief after the corporation has

become insolvent, and proceedings have been instituted to wind up its affairs, and when to grant the relief would prejudice the rights of its creditors? Upon this question there is considerable diversity of opinion in the cases that have considered it. In some jurisdictions the right of a shareholder, when a fraud in the sale of stock has been practiced upon him by the corporation, to have a rescission of his contract, is not allowed after the corporation has become insolvent and proceedings have been taken to liquidate its affairs, although the fraud was not discovered before insolvency and there was no laches in failing to discover it. Thompson on Corporations, Vol. 2, secs. 1360-1378; Cook on Stockholders, sections 151, 154; Hinkley v. Oil & Pipe Line Co., 132 Iowa, 396; 119 Am. St. Rep., 564; note to Fears v. Bartlett, 81 Md., 435, 33 L. R. A., 721. But, a number of courts of last resort, including our own, hold that if the shareholder has been vigilant in discovering the fraud and has not been guilty of any laches, he may rescind the contract after the corporation has become insolvent, and proceedings have been instituted to wind up its affairs. Newton National Bank v. Newbegin, 74 Fed. Rep., 135, 33 L. R. A., 727; 10 Cyc. 440. The only case presenting this question that has heretofore come before this court is Kentucky Mutual Investment Co. v. Schaefer, 120 Ky., 227. In that case the facts were these: Schaefer bought some shares of stock in a West Virginia corporation. Afterwards, and in January, 1900, a Kentucky corporation called the Mutual Investment Company was organized. The promoters of this corporation bought a majority of the shares of stock in the West Virginia corporation, thereby controlling both corporations, and being the chief officers of each. In February, 1901, these officers induced Schaefer to exchange his stock in the West Virginia corporation for an equal amount of stock in the Kentucky corporation. Soon after this the Kentucky corporation made an assignment for the benefit of its creditors, and the assignee brought an action against Schaefer seeking to make him liable for the par value of his stock under the double liability clause of the Kentucky Statutes. As a defense to this action Schaefer set up that he was induced to take the stock in the Kentucky corporation by the false and fraudulent representations made by its officers, and sought to have the contract by which he

became the owner of the stock cancelled. His right to a rescission was resisted upon the ground that it was too late to obtain the relief he sought after the corporation had become insolvent. In answer to this the court said:

"The rule is held in England and in some of the states of this country that a subscription cannot be repudiated on the ground of fraud after the corporation has become insolvent and made an assignment, though the fraud was not discovered before insolvency, and there was no laches in failing to discover it. * * * But in this State an assignee for the benefit of creditors simply stands in the shoes of his assignor, and any defense which may be made against the assignor may be made against him. * * * Where there has been a failure to exercise care to discover the fraud, and the rights of innocent parties will suffer, then he whose negligence has caused the loss should bear it; but where a subscriber for stock is in no fault, and is himself the innocent victim of a fraud, which he did not and could not discover before the perpetrator of the fraud failed, he is entitled to make any defense against the assignee which he could make against the assignor." And held that Schaefer was entitled to have a rescission.

This case, although strongly relied upon by counsel for appellants in support of their contention that they should have a rescission does not in our opinion meet the question here presented. In that case Schaefer became a stockholder in the Kentucky corporation only a few months before it went into liquidation. It does not appear that he had any time or opportunity to inquire into its affairs before it became insolvent, or that he derived any benefit from his connection with it. He was not guilty of any laches, nor chargeable with lack of diligence in any respect. But, in the case before us, both of the complaining stockholders subscribed for a part of their stock in the corporation more than two years before it went into liquidation, and Reid became the owner of a part of his stock more than one year before the bank became insolvent. During this time they not only had the right but ample opportunity to investigate and ascertain the condition of the bank and take such action as appeared to them to be necessary to protect their interest, but they were content to accept as true the representations as to the condition of the bank

made by its officers and receive regularly large dividends on their stock.

It is furthermore entirely probable that persons were influenced to give the bank credit or put their money on deposit with it upon the faith of the knowledge that these shareholders were interested in it, as it is a matter of common knowledge that corporations do obtain credit and do get business from friends and acquaintances of stockholders on the strength of their connection with it. Nor should it be overlooked that the officers of corporations are elected by the stockholders, whose agents they are, and that these stockholders have the power to remove them at pleasure. While creditors and depositors have not the privilege of either inspection or control. They must as a rule act on appearances. They generally take it for granted that the stockholders would not select or retain men to manage their corporate affairs unless they were capable, honest and prudent. They depend for protection in a measure at least not only on the character and standing of the officers, but their knowledge of the stockholders as well. And so it seems to us that every consideration of justice demands that when it comes to a question whether the stockholder who has been guilty of laches, or the innocent creditor, shall suffer, that the stockholder should bear the loss. So, that while fully adhering to the rule laid down in the Schaefer case, we are not disposed to extend the doctrine therein announced so as to enable the stockholder to have a rescission after insolvency proceedings have been instituted when he has not been dilligent to protect his rights and when to grant him such relief would be prejudicial to creditors. Stockholders who have been connected with an institution for so long a time as these appellants, or for such a time as would give them a reasonable opportunity to examine its affairs, should not be permitted after the concern has become insolvent and proceedings have been had to wind up its affairs, to escape responsibility to creditors upon the ground that they were induced by fraud to become stockholders. A rule like this would not only be unjust but would furnish a strong incentive to shareholders to repudiate their connection with the corporation when it was to their interest to do so. The shareholder who enjoys the benefits of his corporate connection in time of prosperity should bear the burden

when adversity comes. In brief, our conclusion is that when a stockholder has been induced by the false or fraudulent representations of the officers of a corporation to purchase its stock. he may during the solvency of the corporation, if the action is brought within a reasonable time after the fraud is discovered and before the statute of limitation has barred it, have a rescission of his contract upon equitable terms or recover the loss sustained by the fraud. But if the corporation is insolvent when the action for rescission or other relief is brought, or if proceedings have then been instituted to liquidate its affairs on the ground of insolvency, and the rights of creditors will be affected, the shareholder who has been induced by fraud or misrepresentation to purchase stock cannot obtain relief from his contract unless he became a stockholder so shortly before the insolvency as not to have had reasonable time or opportunity to investigate its affairs and discover the fraud, nor unless upon the discovery he without delay asserts his right to appropriate relief. Having this view of the question, we think the lower court properly refused to permit the shareholders to rescind their contracts Scott v. Deweese, 181 U. S., 203, 45 L. Ed., 822; Scott v. Abbott, 160 Fed. Rep., 573; Bacon, 86 Fed. Rep., 553; Wallace v. Hood, 89 Fed. Rep., 11.

The remaining question is the right of Reid to set off against the action to recover dividends the deposit in the bank at the time it went into the hands of a receiver. Keeping in mind the settled doctrine in this State that the assignee or receiver of an insolvent corporation does not occupy any better position than his assignor, as held in Kentucky National Bank v. Louisville Bagging Co., 98 Ky., 371; Exchange & Deposit Bank v. Stone, 80 Ky., 109; Bridgeford v. Barbour, 80 Ky., 529; Kentucky Mutual Investment Co. v. Schaefer, 120 Ky., 227, there is not much difficulty in reaching the conclusion that the receiver could not recover from Reid $600.00, when the institution of which he became receiver at the time it was placed in his hands owed Reid $2,000.00. If the action had been brought by the bank before it bacame insolvent to recover from Reid these dividends, there could be no doubt that Reid could set off against the claim the money on deposit by him in the bank, and his rights in this particular are the same when the action is brought by the receiver. Finnell v.

Nesbit, 16 B. Mon., 351; Ely v. Horine, 5 Dana, 398; Harlan v. Lunsden, 1 Duv., 86.

Wherefore the judgment in the case of M. L. Roberts v. the appellee bank and trust company is affirmed, and the case of Allen Reid v. the appellee bank and trust company is reversed with directions for proceedings in conformity with this opinion.