## Robertson, et al. v. Owensboro Savings Bank & Trust Co., Receiver.

(Decided October 17, 1912.)

Appeal from Daviess Circuit Court.

Stockholders—Right to Rescind Contract for Purchase of Stock.—
When a person has been induced by the fraud and misrepresen-
tation of the officers of a corporation to purchase its stock and
executes his notes therefor, he may maintain an action to rescind
the contract and cancel the notes if the corporation is solvent,
but if it is insolvent and proceedings have been instituted to
wind up its affairs a stockholder who has been guilty of any
laches will not be allowed a rescission to the prejudice of cred-
itors of the corporation.

J. R. HAYS for appellant.

R. S. TODD, R. A. MILLER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In April, 1908, the Owensboro Savings Bank & Trust
Co., became insolvent and was placed in the hands of a
receiver. Among the assets of the bank that came into
the possession of the receiver were two notes, one for
$500, and the other for $1,000, executed to the bank by
the appellants in 1907, and this action was instituted on
these notes by the receiver.

For defense the appellants set up that the notes sued
on were renewals of two notes of like amounts executed
by them to the bank in the early part of 1906 for ten
shares of stock in the bank. They futher averred in sub-
stance that when the notes were executed the president
of the bank falsely and fraudulently represented to them
that the bank was in a flourishing condition and that
its stock of the par value of $100 was worth $150 per
share. That the bank had a large surplus fund and was
in all respects a prosperous solvent institution. That
they relied implicitly upon the truth of these representa-

tions, and induced thereby agreed to and did subscribe for ten shares of stock. They further averred that all of the statements made to them relative to the condition of the bank were false and that the bank was at the time they subscribed for the stock insolvent and its stock practically worthless, but that they had no knowledge of the condition of the bank until after it went into the hands of a receiver. They further averred that no certificates of stock were ever delivered to them, and that their names did not appear as stockholders of the bank, nor did they ever participate in the election of directors or attend any meeting of stockholders. It is further shown by their answers, and amended answers, and counterclaim, that they requested permission in 1907 to examine the condition of the bank but the officers refused to permit them to make any examination. It was also shown by their pleadings that they or the Electric Planing Mill Co., apparently acting for them, received three or four semi-annual dividends of 5 per cent on this stock from the bank. It is further shown that suit was brought against them in the United States Court under the double liability statute to recover from them an amount equal to the par value of their stock, and that in this suit judgment went against them for the amount claimed, and this amount they pleaded as a counterclaim against the receiver, also asking that his petition, seeking to recover on the two notes, be dismissed. The lower court sustained general demurrers to these pleadings, and declining to plead further, judgment went against appellants for the amount due on the notes.

The substance of the defense attempted to be made by the appellants is that they were induced to execute the notes by the false and fraudulent representations of the officers of the bank as to its condition.

But unless the averments of the answers that no certificates of stock were issued to them and that their names did not appear as stockholders, and the fact that they took no part in the affairs of the bank and were denied the right to examine into its condition, takes this case out of the rule laid down in Reid v. Owensboro Savings Bank & Trust Co., 141 Ky., 444, this case is controlled by the decision in that case. We do not think the fact that certificates of stock were not issued to appellants affects their liability. That they were stockholders is not open to doubt. They took the stock, exe-

cuted notes in payment of it, renewed these notes, and the bank paid dividends on the stock to them or to a business concern they were connected with. We may further add upon this point that their pleadings show that the United States Circuit Court as well as the United States Circuit Court of Appeals held that they were stockholders. Nor does the statement that the officers of the bank refused to permit them to examine its affairs help their defense. If they believed the statements published by the bank as to its condition or the representations made by its officers as to its solvency were false, they could easily have forced the bank to submit to an examination, and they also had the right to bring suit for the cancellation of the notes upon the ground of fraud. Unfortunately for appellants they did not resort to either of these readily accessible remedies. They rested apparently satisfied with the representations made as to the condition of the bank, accepting in the ordinary course of business the dividends paid by the bank on the stock they purchased, and not until more than two years after the execution of the notes, and at a time when the bank had gone into the hands of a receiver, did they attempt to obtain relief from the fraud that was practiced upon them.

For the reason stated in the Reid case, their prayer for relief comes too late to be available, and the judgment is affirmed.