## Leffingwell, et al. v. Evans.

### Evans v. Cornett.

(Decided October-14, 1919.)

### Appeals from Rowan Circuit Court.

1. Corporations—Increase of Capital Stock.—The capital stock of a corporation can not be increased except in the manner pointed out by section 553, Kentucky Statutes.

2. Corporations—Wrongful Issue of Stock—Action to Recover Loss. —Capital stock issued in excess of the amount authorized by the articles of incorporation is void. One who in good faith purchases outstanding stock certificates issued in excess of the authorized capital may maintain an action against the corporation or its officers to recover the loss sustained by the wrongful issual of the stock.

3. Corporations—Issue of Stock in Excess of Amount Authorized— Vendor in Good Faith.—The good faith vendor of stock issued in excess of the amount fixed in the articles of incorporation does not impliedly warrant that the stock is not a part of the fraudulent over issue by the officers of the company, but only that he is the owner of the certificates transferred.

DYSARD & CALDWELL, H. M. COLLINS and CLAY & HOGG for appellants.

B. S. WILSON and C. W. GOODPASTER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The Leon Stave Company was a corporation, organized under the laws of this Commonwealth on October 11, 1901, with a capital of $12,000.00 divided into one hundred and twenty shares, of the part value of $100.00 each. By its articles of incorporation it was to begin business on Monday, October 21, 1901, and to continue for a period of ten years. Its business was to be conducted by a board of three directors. In January, 1910, some one suggested that the corporation increase its capital stock from $12,000.00 to $13,000.00, and issue the $1,000.00 increase in capital stock to Drew Evans, who was foreman at the mills then located in Rowan county. Accordingly a note or minute was made on the books of the company, which reads as follows:

"We also have increased our capital stock from twelve thousand to thirteen thousand. We issue the one thousand increase to Drew Evans, our head man on the grounds."

Some time that year a certificate for ten shares of stock was issued by the Leon Stave Company to Drew Evans, for which Evans paid the company $1,000.00 in cash. Before that time Evans was not a stockholder or an officer of the company, but he was foreman at the mills or yards. Evans continued to manage the mills and to hold the pretended stock for about two years and until December, 1911, when he sold same to Cornett for the sum of $1,000.00, and Cornett superseded Evans as foreman at the mills. For some months after Cornett purchased the stock, the mill continued to operate although the corporation had expired by the terms of its charter at the time Cornett purchased the stock from Evans. When the corporation began to wind up its business and it became apparent that there would be no assets and that the stockholders would receive nothing. Cornett brought an action against Evans to recover the $1,000.00 which he had paid for the stock in the company, alleging that Evans had fraudulently misrepresented the value of the stock and the assets of the company and that Cornett had been deceived and misled by such statements and induced thereby to purchase the stock.

Issue was joined and evidence taken. While taking the deposition of one of the officers of the corporation, it developed that the corporation had a capital stock of

only $12,000.00 instead of $13,000.00; that its capital stock was never increased, and that the $1,000.00 worth of stock issued to Evans and transferred by Evans to Cornett was in fact never authorized, the company not having complied with section 553, Kentucky Statutes, with reference to increasing its capital stock. Cornett then filed an amended petition in which he charged that Evans had obtained his money without consideration; that Evans did not own any stock in the Leon Stave Company, but falsely pretended and represented that he did own ten shares therein of the value of $1,000.00, when in truth and in fact he did not own any stock in said company; that the ten pretended shares which Evans held and which he undertook to transfer to Cornett were over-issued stock and therefore of no force or effect and of no value. Evans answered admitting that the stock was over-issued by the company but denying his knowledge of that fact at the time of the sale of the stock to Cornett, and also denying any intention to defraud or deceive Cornett. The answer was made a cross-petition against the officers and directors of the stave company, Evans averring that the company had wrongfully and without authority issued the stock to him and obtained from him $1,000.00 without consideration.

Evans sought to recover of the officers of the corporation the money thus paid it with interest. To this answer and cross-petition the officers of the company filed a demurrer which was overruled by the court, whereupon the cross-defendants filed an answer, setting forth in detail how the ten shares of capital stock issued to Evans were originally issued, and averred that the stock was regular and valid; that Evans and Cornett during all the time the stock was held by them had received and used dividends from the company and enjoyed the privileges and powers of stockholders in the corporation; that the business of the corporation had been finally wound up and closed; that the money paid by Evans for the stock was received by the corporation, placed in its treasury and used by the company and not by either of the cross-defendants, and that Evans and Cornett as stockholders had received the same benefit from the $1,000.00 thus paid for the stock as any other stockholder, including the cross-defendants. To this answer of the cross-defendants a general demurrer was filed and sustained, and the

cross-defendants declining to plead further, judgment was entered against the officers of the company in favor of Evans for $1,000.00 with interest, and also judgment in favor of Cornett against Evans for $1,000.00 with interest, and both Evans and the officers of the stave company appeal.

It can hardly be doubted that the over-issue of stock made by the officers of the stave company was void. It did not pretend to comply with the requirements of section 553, Kentucky Statutes, in issuing the stock. The minute on the books of the company was not even signed, and had it been signed, it would not have amounted to a compliance with the statutes. To increase its capital stock a corporation must proceed much in the same manner as in organizing a corporation. The capital stock of a corporation may be increased only by the vote or consent of the stockholders representing two-thirds of the capital stock after notice of the proposed increase has been mailed to the address of each stockholder at least twenty days before the meeting is held, provided a statement of the increase shall be signed and acknowledged by the president and a majority of the directors, and filed and recorded in the same manner as the articles of incorporation. None of these things were done by the Leon Stave Company before it issued and sold the ten shares of its capital stock to Evans for $1,000.00. The whole authorized capital stock of the company ($12,000.00) had been issued and was then outstanding and held by the officers of the company, and the ten shares issued to Evans was an over-issue wholly unauthorized and void. Wilson v. Joplin, et al., 112 Ky. L. R. 308; Allen v. South Boston R. Co. (Mass.), 5 L. R. A. 77.

"It is a well established principle that any issue of stock by a corporation in excess of the amount prescribed or limited by its charter is *ultra vires,* and the stock so issued is void, even in the hands of a *bona fide* purchaser for value. . . . Although over-issued stock is void even in the hands of a *bona fide* holder, yet a right of action may exist against the corporation, and a holder of the certificate who has taken it for value and without knowledge of any fact tending to show its invalidity is entitled to reimbursement for any loss he may have incurred in reliance upon the validity of the certificate." 7 R. C. L. p. 218. See also note to case of First Avenue Land

Co. v. Parker, 87 A. S. R. 847. Cook on Corporations, 5th Edition, page 639, says:

"Certificates of stock issued in excess of certificates that represent the full authorized capital stock of a corporation, represent over-issued stock. Such stock is spurious and wholly void. This is the settled law, and it prevails equally whether the over-issue is the result of accident or mistake or want of knowledge of the law, or is due to fraud or intentional wrongdoing. . . . Over-issued stock, no matter how over-issued, represents nothing, and is wholly and entirely valueless and void."

Thompson on Corporations, 2nd Edition, vol. 4, page 135, states the rule as follows:

"The rule is well settled that the certificates of stock issued in excess of the limit fixed by the corporate charter are void; and the holder of them is entitled to none of the rights and subject to none of the liabilities of the holder of authorized stock. The doctrine approved by the Supreme Court of Wisconsin is that over-issued stock no matter how the over-issue is made, represents nothing and is entirely valueless and void, and certificates representing such stock are simply so much waste paper, and the person holding them is not a stockholder. . . . The over-issue is void though the issue was the unanimous act of the stockholders under an honest apprehension as to their powers. . . . All such stock is void even in the hands of *bona fide* purchasers for value."

Shares of stock in a corporation are generally held to be choses in action, and one who receives such shares in good faith and transfers them in like manner, is held to warrant only his own title and not the power or authority of the corporation to issue such stock.

It has been held that where the vendor of stock has knowledge of the fact that the stock sold is a part of an over-issue, there is no implied warranty further than that the certificates were in the usual form, regular on their face and were issued by the duly constituted officers of the company and were sealed with the genuine seal of the company.

The vendor does not impliedly warrant that the stock is not part of a fraudulent over-issue by the officers of the company. Peoples Bank v. Kurtz, 99 Pa. St. 344. The rule is different however when the vendor of the stock

does not act in good faith. In such case the vendee of fraudulent or illegal stock may maintain an action against his vendor if the latter was a party to the fraudulent issue, and may recover the amount paid. Fosdick v. Sturges, 1 Biss 255, Fed. Cas No. 4956. In the case of Peoples Bank v. Kurtz, *supra,* the court said:

"Shares of stock in the corporation are choses in action, giving a right to dividends and an interest in the capital. The certificate is the evidence of such ownership, and there can be no doubt that if the certificate is forged or the holder is not such *bona fide* so that he has no claim on the corporation, the vendor would be liable to his vendee on the implied warranty. Where, however, there has been a fraudulent over-issue of stock, evidenced by certificate under the genuine seal of the corporation, the case presented is somewhat different. It has been settled that a corporation is liable to *bona fide* holders of such fraudulent certificate, because, like individuals, they are responsible for the fraudulent exercise of the power entrusted by them to their officers and agents."

It appears from the record that Evans in the purchase and transfer of the stock to Cornett acted in good faith and without knowledge of any defect in his title or want of power in the corporation to issue the stock. Cornett was a *bona fide* purchaser for value. He had not been connected with the corporation before his purchase of the stock from Evans and knew nothing of its financial condition or charter provisions. The stock was regular on its face and bore the signature of the officers of the corporation and the corporate seal. In such case, the general rule, as stated by text writers and courts, allows the holder in good faith, whether immediate or remote, to maintain an action against the corporation or its officers issuing or causing stock to issue for the damages sustained by reason of the wrongful issual of the stock, but does not allow the holder of such stock to recover of his *bona fide* transferror. The general rule is well stated in Cook on Corporations, 6th Edition, section 296, as follows:

"In the absence of fraud the purchaser of over-issued and spurious stock cannot hold his vendor liable thereon. The *bona fide* vendor can be held to warrant only his own title to the shares, not the right of the corporation to issue them. If he came by them honestly and sells them in

good faith, there is no recourse to him, even though they turn out to be spurious.''

Applying this rule, Cornett had no cause of action against Evans, but was entitled seasonably to maintain an action for damages against the officers of the corporation who had issued or allowed to be issued the stock which Evans purchased and transferred to Cornett, if Cornett has sustained damages. The amount of his recovery will depend upon what sum or sums Cornett has received in dividends or from other sources as a result of his purchase of the stock and upon the value of stock in the corporation at the time he purchased the same. The trial court erred to the prejudice of appellant Evans in failing to sustain his demurrer to the petition, as amended, of Cornett, and in failing to sustain the demurrer of Leffingwell, et al., to the cross-petition of Evans.

A plea of limitation was included in the answer of Leffingwell, et al., to the cross-petition of Evans, but there was no such plea so far as the record discloses made by the cross-defendants to the right of Cornett to maintain an action, nor indeed was it necessary because Cornett was not seeking to recover of the officers of the corporation, but only of Evans.

It is, therefore, unnecessary to consider this plea further than to say that one must not unreasonably delay the bringing of an action for relief on account of loss occasioned through an over-issue of stock; if he does, his laches will bar his right of recovery.

Judgment reversed for proceedings consistent with this opinion.