## Cohn v. Dorman, Banking and Securities Commissioner et al.

(Decided March 12, 1935.)

WEBB & WEBB and CARR & CARR for appellant.

HENRY F. TURNER for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In October, 1931, the Farmers' Bank of Fulton, Ky., suspended business and was placed in the hands of the banking commissioner of Kentucky for liquidation.

It became necessary to assess the stockholders of the bank 100 per cent. on their respective shares of the capital stock for the benefit of the bank's creditors. Appellant was the owner of five shares of the capital stock, and pursuant to proper proceedings he was assessed by the banking commissioner the sum of $500, and upon his refusal to pay same, appellee, the banking commissioner, brought this suit in the Fulton circuit court to recover of appellant the sum so assessed against him.

Appellant, defendant below, filed his answer denying that he was the owner of any stock in the bank and denying any liability thereon. He pleaded affirmatively, in avoidance of the liability as an alleged owner of the stock in the bank, that the bank was organized in 1905 and capitalized at $35,000 divided into 350 shares of $100 each par value. He says that immediately after the organization of the bank the entire authorized capital stock was issued and sold by the bank, and that no increase of the capital stock was thereafter authorized by any amendment to its articles of incorporation or otherwise. He says that on the 6th day of March, 1922, R. N. Phipp transferred, assigned, and sold to him what purported to be a certificate of stock in the said bank for five shares of a par value of $100 each; that he bought said stock in good faith, believing it was the duly authorized stock of the bank, and he kept and held same. He says that in May, 1933, for the first

time, he learned that the said five shares of stock sold to him by Phipp, was not a part of the original issue of the $35,000 stock in the bank, but that same was a certificate of stock that had been issued and delivered to Phipp over and above the said authorized issue of $35,000. He says that he learned at that time (May, 1933) that after the original incorporation of the bank and the organization thereof, and the issuance and sale of 350 shares of authorized stock therein, said bank, without having been authorized to increase the issue of its capital stock, issued and sold purported stock in the sum of $15,000 over and above the authorized $35,000; that the five shares upon which the plaintiff is now attempting to hold him liable in this case was of the said unauthorized stock issued by the bank, without being authorized to do so under any amendment to its articles of incorporation, and therefore the overissue of stock is ultra vires and of no effect, and that he is not liable for any assessment thereon.

Plaintiff filed a demurrer to the answer which was overruled by the court. Thereupon plaintiff filed its reply admitting that the bank was incorporated with an authorized capital stock of $35,000, but denied that no increase of the capital stock of the bank was thereafter authorized by any amendment to its original articles of incorporation or otherwise. It denied certain material allegations of the answer, and pleaded affirmatively, in paragraph 2, that after the bank was originally organized, and under its original articles of incorporation, it was authorized and empowered to issue $35,000 capital stock of a par value of $100 per share, and thereafter, on April 20, 1911, it increased the original capital stock from $35,000 to $50,000, and that the records of the bank showing an increase of the capital stock are lost or misplaced and cannot be produced; but averred that said increase was duly and regularly made; that, pursuant to said increase of capital stock, a certificate for five shares was issued to R. N. Phipp who took, accepted, and held same until March 3, 1922, at which time he sold and transferred same to appellant; that during the time Phipp held the stock it was treated as valid by him and all parties concerned, and he (Phipp) drew dividends thereon each and every year he held same until he transferred the said stock to the defendant in March, 1922; that defendant took and accepted said stock and drew dividends thereon each and

every year he held same, totaling 84 per cent. of its par value. It further alleged, in substance, that during the time appellant owned the stock he was a resident of Fulton county, Ky., being a physician by profession, and had his office within a few blocks of the bank and had access to the books of the bank during all these years; that he attended the meetings of the stockholders of the bank and helped to elect its officers; that the stock certificate which he held had printed on its face the words, "The Farmers Bank of Fulton, Fulton, Kentucky—Capital Stock $50,000.00." That with his knowledge of the officers of the bank and his business associations with many of them and with his opportunity to examine the bank's records to ascertain the legality of the capital stock of the bank and with his knowledge that the bank was holding itself out to the world as a bank of $50,000 capital stock, and had accepted dividends in the amount of 84 per cent. of the par value of the stock during the time he held same, and never having investigated the increase of the capital stock of the bank or having taken any steps to question the validity or the legality of the proceedings taken by the stockholders of the bank in its effort to increase its capital stock from $35,000 to $50,000, and by his failure to use ordinary diligence to investigate, he was and is estopped from proclaiming any defect or irregularity in the issuance of said stock.

The issues were completed by subsequent pleadings, and the evidence was taken and by agreement of parties a jury was waived and the cause submitted to the court for trial. The court held appellant liable on the assessment, and entered judgment accordingly.

Appellant filed his motion and grounds for a new trial which were overruled, and he is now prosecuting this appeal.

There is practically no conflict in the evidence. The facts are substantially agreed on as stated above. This leaves for consideration only the law applicable to the situation here involved.

With respect to the proceedings had by the bank in 1911, at the time the capital stock was increased or attempted to be increased, the evidence shows that there was a meeting of the stockholders for that purpose, and a minute of the proceedings made and deposited in the vault of the bank, but there was no certificate of the

increase of the stock recorded in the office of the county clerk or with the secretary of state, as required by the statutes; nor is it shown whether or not two-thirds of the capital stock was represented at the meeting. The fact that a meeting of the stockholders was called and the increase of the capital stock voted creates the presumption that two-thirds of the stock was represented, unless the contrary be affirmatively shown. Man v. Boykin, 79 S. C. 1, 60 S. E. 17, 128 Am. St. Rep. 830.

The argument for appellant is that the failure of the bank to record the amended articles of incorporation showing the increase of the capital stock, and its failure to show that the increase was voted by two-thirds majority of the stock, rendered the $15,000 increase absolutely void, and, the stock being void, he cannot be estopped to deny its validity or deny his liability for the assessment attempted to be made against him.

The appellees' contention is that the stock issue was valid, and that failure to comply with the provisions of the statute was an irregularity only, and, since the rights of creditors are involved, appellant cannot escape liability as a stockholder.

To sustain appellant's position that the increase of the capital stock was and is void, there are cited in brief certain authorities which apparently sustain his position, but it seems that the authorities of all jurisdictions are hardly in agreement on the subject. However, there is a distinction between cases where the law of the jurisdiction authorizes an increase in capital stock of a corporation, and where there is no such authority. In the former line of cases, where the law authorizes an increase, a bona fide attempt or substantial compliance with the law is sufficient, and such stock is not void, but irregular only; but if the law does not authorize an increase of the capital stock of the corporation, then an attempted increase is void. But if the stock is void as between the stockholder and the corporation, the holder may not escape liability to creditors after the corporation becomes insolvent.

The case of Leffingwell v. Evans, 185 Ky. 351, 216 S. W. 58, 60, is a case where the capital stock was limited in the articles of incorporation to $12,000. No attempt was made to amend its articles of incorporation, nor was it shown that there was as much as a meeting

of the stockholders or a vote taken to increase the capital stock. The officers of the company entered a minute on the books purporting to issue $1,000 of the capital stock to the foreman of the company. This purported increase of the capital stock became involved in litigation, and on appeal this court held the increase void. However, in speaking of a plea of limitations which was interposed in the case, we said:

> "It is therefore unnecessary to consider this plea further than to say that one must not unreasonably delay the bringing of an action for relief on account of loss occasioned through an overissue of stock; if he does, his laches will bar his right of recovery."

At the time of the attempted increase of the capital stock of the Fulton Bank in 1911, the appellant was a holder of some of the original stock isued at the time of its organization in 1905. He was also a customer of the bank from the date of its original organization to the time it suspended business in 1930. After the increase of the stock in 1911, the bank changed the sign on its windows from $35,000 capital stock to $50,000, and its letterheads and stationery indicated its capitalization at $50,000. Appellant, as a stockholder of the bank, made no inquiry or investigation into the regularity or legality of the $15,000 increase of capital stock during the time Phipp held the stock from 1911 to 1922, at which time appellant purchased the stock of Phipp and held it and drew dividends thereon until the closing of the bank in 1930, and during this time he still made no investigation or took any steps to inform himself of the regularity or validity of the stock.

Appellant also cites the case of Scovill v. Thayer, 105 U. S. 143, 149, 26 L. Ed. 968. In this case the articles of incorporation provided for $100,000 capital stock. Under the laws of Kansas, the original stock could not be increased more than double the amount. The corporation attempted to increase its capital stock more than double the amount of the original capitalization, and the courts held the excess void on the ground that the corporation had no power to increase its capital stock beyond the limits authorized by law. In distinguishing this kind of case from cases where the increase is within the limits of the law, the court said:

> "It is true that it has been held by this court that

a stockholder cannot set up informalities in the issue of stock which the corporation had the power to create."

In referring to certain cases where there were only irregularities in the procedure had to increase the capital stock, the court, in the case supra, further said:

"But those were cases where the increase of the stock was authorized by law. The increase itself was legal and within the power of the corporation, but there were simply informalities in the steps taken to effect the increase. These, it was held, were cured by the acts and acquiescence of the defendant."

To the same effect, see 7 C. J. p. 516, sec. 100.

The case of Man v. Boykin, 79 S. C. 1, 60 S. E. 17, 18, 128 Am. St. Rep. 830, is very similar to the case at bar. In that case the corporation attempted to increase its capital stock, and it seems that the procedure was the same as in the present case. The stockholders met and voted an increase of the capital stock, but no certificate of the increase was filed with the secretary of state, and for that reason holders of stock representing the increase sought to have the new stock declared invalid. The court held that there is always a presumption in favor of regularity. In that opinion it is said:

"It is objected, however, that a two-thirds vote of the stockholders for an increase of stock was not shown, and, this being essential to its validity, there was no increase. This contention cannot be sustained. In such cases there is always a presumption in favor of regularity. Here the presumption is especially strong. The duty, therefore, devolved upon the stockholders to rebut it. They having failed to do so, we must hold the increase properly voted."

But whether or not the increase in the capital stock in the case at bar was valid for all purposes and intents, we need not decide. If the regularity or validity of the stock had been questioned by the holders of such stock certificates as between them and the bank before it became insolvent, a different case might have been presented. Conceding, without deciding, that the holders of such stock could have voided same in a controversy

between them and the bank, but since the bank has become insolvent and the rights of creditors are involved, a different rule prevails. 7 C. J. sec. 100, p. 516.

This precise question was involved in the cases of Robertson v. Owensboro Saving Bank & Trust Co., Receiver, 150 Ky. 50, 149 S. W. 1144, and Little v. Owensboro Sav. Bank & Trust Co.'s Receiver, 150 Ky. 331, 150 S. W. 334, and other companion cases reported in Reid v. Owensboro Sav. Bank & Trust Co., 141 Ky. 444, 132 S. W. 1026. In these cases the regularity or validity of an issue of stock was involved, and after the bank became insolvent the holders of such stock sought to have it adjudged void and thereby avoid liability to the creditors. Speaking on this question, the court said:

> "But the question here presented is: Has a stockholder the right to this relief after the corporation has become insolvent, and proceedings have been instituted to wind up its affairs, and when to grant the relief would prejudice the rights of its creditors?"

Reid v. Owensboro Saving Bank Co., 141 Ky. 444, 132 S. W. 1026, 1028.

In the Owensboro Bank Case, supra, the holder of the questioned stock had held it for only two years previous to the insolvency of the bank. It was held that this was ample time to have afforded an investigation by the stockholder, but, having failed to do so, he was guilty of laches and estopped to deny his liability to creditors of the insolvent bank.

In the case at bar, appellant had owned the stock in question nine years, and during this time he was a customer of the bank. Certainly he had all necessary time and opportunity to investigate the regularity and validity of his stock. He drew the dividends thereon and treated it as valid in all respects so long as it was beneficial to him. But when the unfortunate circumstance arose whereby his stock turned from an asset to a liability, and the rights of innocent creditors became involved, he then awoke to the fact that there was an irregularity in the issuance of the stock and sought to disown it. If he owned the stock in prosperity, why disown it in adversity to the detriment of creditors?

It is argued that articles of incorporation and

amendments thereto, being recordable instruments, and no record of the increase of the capital stock being of record, as required by law, the public had constructive notice of the fact, and, therefore, the creditors of the bank cannot complain. But we do not think this contention can be sustained. It is common knowledge that the public does not pry into the affairs of banks to ascertain whether or not their stock and business are regular. This duty is incumbent upon the officers and stockholders of the bank.

The facts presented by this record, measured to the authorities herein cited, impel us to the conclusion that the appellant cannot now avoid his share of liability to the creditors of the insolvent bank, and the chancellor did not err in so holding.

The judgment is affirmed.